UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER
and
REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * * *

Eric Ringsred, an individual and a state, federal and local taxpayer, State of Minnesota, by Eric Ringsred, The Family of Eric Ringsred, Deborah, Anna, Miles, Anders and Odin Ringsred,

Plaintiffs,

vs.

City of Duluth, a municipal corporation, and the following City Officials, individually and in their official capacities, Mayor Gary L. Doty, Cynthia Albright, Assistant City Attorney, Brian Brown, City Attorney, Robert Asleson, Assistant City Attorney, John Schweiger, Special Projects Manager, John Smedberg, Assistant City Attorney, Duluth Economic Development Authority, and its Director, Cynthia Albright, Individual and in her official capacity, Team Duluth, Soft Center-Duluth, Inc., Michael McNamara, Duluth Area Chamber of Commerce and David Ross, CEO,

Defendants. Civ. No. 00-2241(RHK/RLE)

* * * * * * * * * * * * * * * * * * *

(40) (41)

FILED MAR 14 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

At Duluth, in the District of Minnesota, this 14th day of March, 2001.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A) and (B), upon the Motions of the Plaintiffs for an Order allowing them to Amend their Complaint, for an Order allowing the videotaping of depositions, and for an Order sanctioning the Government Defendants for their alleged "incivility and over-aggressiveness."

A Hearing on the Motions was conducted on February 22, 2001, at which time the Plaintiffs appeared pro se; the Defendants Duluth Area Chamber of Commerce, Team Duluth, David Ross, and Michael McNamara, appeared by R. Thomas Torgerson, Esq.; the Defendant Soft-Center Duluth, Inc., appeared by Fay White, Esq.; and the Government Defendants appeared by M. Alison Lutterman, Assistant Duluth City Attorney.

For reasons which follow, the Plaintiffs' Motion to Amend their Complaint is denied, with the exception of allowing the deletion of Anna, Miles, Anders, and Odin Ringsred, from the caption of the case; their Motion to allow videotaping of depositions is granted; and their Motion to sanction the Government Defendants is denied.

## II. Discussion

The Plaintiffs in this action, Eric Ringsred ("Ringsred"), and his family members, have brought Motions to amend their Complaint, in order to dismiss the minor children who are named as Plaintiffs;[1] to join City Building Inspector Duane Lasley ("Lasley") as a Defendant; to add two additional bases for recovery -- under the Racketeer Influenced and Corrupt Organizations Act, Title 18 U.S.C. §1962(c) and (d)("RICO"), and for "restraint of trade" -- to clarify, and/or to specify the facts and legal bases for, the claims asserted in their Original Complaint; and to add a claim for punitive damages under Minnesota States Sections 549.191 and 549.20. In addition to seeking to amend their Complaint, the Plaintiffs also request leave of the Court to allow the video-recording of depositions, and they request that the Government Defendants be sanctioned for alleged "incivility and over-aggression." See, Plaintiffs' Notice of Motions, at 2. For the most part, the Defendants oppose the Motions and, given their distinct bases, we address the Motions separately.

[1]None of the Defendants have objected to this aspect of the Plaintiffs' Motion to Amend which, in effect, results in the voluntary dismissal of the claims of Ringsred's minor children and, since the Motion has a dispositive effect, we recommend to the District Court that the Motion be granted.

A. <u>The Motion to Amend the Complaint in Order to Add New Causes of Action, and a New Defendant</u>.

Although the Plaintiffs contend that, except for the proposed joinder of an additional Defendant and the inclusion of three new substantive claims, their Amended Complaint is merely a clarification of the factual and legal bases for their original claims, the contention is a gloss. In reality, the Plaintiffs have grossly distended their original six-page Complaint into a broadside, some thirty-six pages in length. Indulgently construed, their proposed Amended Complaint is a meandering diatribe which, by every appearance, generally excoriates anyone -- named parties or not -- who may have opposed the Plaintiffs' urgings in the past. As a result, the proposed new pleading encompasses some twenty-eight asserted causes of action. In many instances, the numbered causes of action have alleged alternative bases for recovery, ranging from claimed violations of someone's -- but plainly not the Plaintiffs' -- constitutional rights, to purported State and Federal criminal and civil violations.

In support of their Motion to Amend, the Plaintiffs have framed their argument in the setting of Rule 15(a), Federal Rules of Civil Procedure, which provides, where pertinent, as follows:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also, Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

"[A]lthough we begin with a presumption of liberality, an amendment to a pleading can be successfully challenged on grounds of futility, if the claims created by the amendment would be unable to withstand a Motion to Dismiss." Ulrich v. City of Crosby, 848 F. Supp. 861, 877 (D. Minn. 1994), and cases cited therein. In sum, "the right to amend the pleadings is not absolute," and "the granting of a Motion to amend the pleadings is vested in the sound discretion of the Trial Court." White Consolidated Industries, Inc. v. Waterhouse, 158 F.R.D. 429, 434 (D. Minn. 1994); see also, Upsher-Smith Laboratories v. Mylan Laboratories, 944 F. Supp. 1411, 1442 (D. Minn. 1996).

Where, as here, the deadline for the amendment of pleadings has since expired, the propriety of the Motion for leave to amend "is most properly considered within the framework of Rule 16(b),

Federal Rules of Civil Procedure." Alholm v. American Steamship Co., 167 F.R.D. 75, 77 (D. Minn. 1996). Under Rule 16(b), a Court's Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." See also, Notes of Advisory Committee on 1983 Amendment to Rule 16(b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). As the Court expressed, in Rouse v. Farmers State Bank of Jewell, 866 F. Supp. 1191, 1198-99 (N.D. Iowa 1994):

> A scheduling order is an important tool in controlling litigation. Jochims v. Isuzu Motors, Ltd., 145 F.R.D. 507, 510 (S.D. Iowa 1992). A magistrate judge's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985). Scheduling orders have become increasingly critical to the district court's case management responsibilities because "[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." Id. The Court in Geiserman v. MacDonald, 893 F.2d 787 (5th Cir. 1990), also observed that the flouting of discovery deadlines causes substantial harm to the judicial system.

Indeed, "[w]e doubt that it can be seriously questioned that '[adherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings.'" Alholm v. American Steamship

Co., supra at 79, quoting Rouse v. Farmers State Bank of Jewell, supra at 1199.

Under the Pretrial Order in this case, which is dated December 1, 2000, the deadline for amending the Complaint was February 1, 2001. While the Plaintiffs did attempt to secure a Hearing on their proposed amendments on February 1, 2001, they failed to serve their Motion papers fourteen days prior to the Hearing date, as required by our Local Rules, see, D. Minn. L.R. 7.1, and their Motion was struck. As a consequence of the Motion's belatedness, in order to amend the Scheduling Order, so as to allow the amendments they seek, the Plaintiffs bear the burden of showing good cause that, notwithstanding their diligence, the deadline for such amendments could not be honored. The Plaintiffs have abjectly failed in that burden.

According to the Plaintiffs, the reason they were untimely in serving their Motion papers was because of unforeseen circumstances that occurred during the week of January 15, 2001 -- namely, the death of a beloved family pet, as well as mechanical difficulties in printing their final Motion papers on January 17 and 18, 2001. See, Plaintiffs' Memorandum in Support of Their Motions, at 2. The love of a family pet is neither to be doubted, nor minimized, but we apply here an objective standard, not one driven by the formidable, yet subjective force, of a lost pet. Similarly, while the

Plaintiffs appear to have retained a typist to "draft" their proposed amended pleading, we have no showing that the typist was competent to serve as the Plaintiffs' solicitor. See, Eric Ringsred Affidavit, at ¶2 ("Composition of Plaintiffs' 'First Amended Complaint' took place over a two-week period from January 3-18, 2001."). Moreover, if "printer problems" there were, they could have been readily resolved by copying the pertinent documents onto a diskette for printing on the equipment of a commercial vendor of such duplicating services.

More importantly, what may have transpired during the week of January 15, 2001, has little weight in the context of the proposed amendments. The amendment deadline, which we here enforce, was not found objectionable by the Plaintiffs at the time of the Initial Pretrial Conference. At that time, the Plaintiffs were in a position to evaluate what claims they thought were in need of clarification, or amendment, as they had filed their Complaint some two months previously. With no apparent exception, the factual allegations, which they now propose to add to their pleadings, were known to the Plaintiffs for months, if not years, before this action was commenced. In short, the Plaintiffs offer no newly discovered facts as necessitating an Amended Complaint; proverbially, they seek to "pour old wine into a new bottle." Many of the newly proposed factual assertions arose from State Court pro-

ceedings, either completed or in progress, which appear to have produced results which were not fully to the Plaintiffs' liking. We find no purpose in allowing the amendments now belatedly sought, other then to foster the Plaintiffs' apparent interest in protraction and delay. If, as the Plaintiffs portend, they need Federal jurisdiction to enforce injunctive relief granted, or denied, by a local State Court, they offer no logical, nor legal basis, for such extraordinary relief.

On the Record presented, we find no responsible showing of cause for the Plaintiffs' untimely effort to amend their original Complaint. In this instance, our finding is independently buttressed by the fact that the newly asserted claims are legally futile. In large measure, the Plaintiffs attempt to prosecute claims on behalf of individuals who may have reason to grieve, but who are not parties to this action. While the Plaintiffs may wish to vanquish forces which, philosophically, they find objectionable, they offer no showing that any of their personal legal interests were impacted by the assertedly objectionable conduct, except on some metaphysical basis. With equal frequency, the Plaintiffs appear to assert causes of action against persons who are not parties to this action. In either instance, the Plaintiffs have no "standing" to sue those who have no connection to the Plaintiffs' legal interests. As we have previously observed:

> At its core, the standing requirement contains three constitutional elements:
>
> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, * * * and (b) "actual or imminent not 'conjectural' or 'hypothetical,'" * * *. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly * * * trace[able] to the challenged action of the defendant, and not * * * th[e] result [of] the independent action of some third party not before the court." * * * Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Allnew v. City of Duluth, 983 F. Supp. 825, 833 (D. Minn. 1997), aff'd, 187 F.3d 640 (8th Cir. 1999), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

While the Plaintiffs have articulated concerns that they bear with respect to the conduct of various other persons, they have wholly failed to demonstrate that they have any standing to prosecute those concerns. See, e.g., Proposed Amended Complaint, at First Cause of Action, Second Cause of Action, Fourth Cause of Action, Sixth Cause of Action, Eleventh Cause of Action, Fifteenth Cause of Action, Eighteenth Cause of Action, Twenty-First Cause of Action, Twenty-Third Cause of Action, and Twenty-Fourth Cause of Action.

Moreover, the Plaintiffs have made no responsible attempt to competently plead a cognizable claim under RICO. In order to state a RICO claim, the Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

Sedima, S.P.R.L. v Imrex Co., Inc., 473 U.S. 479 (1985). The pattern element "requires at least two acts of racketeering activity." See, Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402, 406 (8th Cir. 1999). "However, a mere allegation of two or more acts is insufficient to state a RICO claim; the predicate acts must be related and must 'amount to or pose a threat of continued criminal activity.'" Id., citing United HealthCare Corp. v. American Trade Ins. Co., Ltd., 88 F.3d 563, 571 (8th Cir. 1996), quoting in turn, H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989). "The relationship prong of the pattern element is satisfied if the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Id., citing Handeen v. Lemaire, 112 F.3d 1339, 1353 (8th Cir. 1997).

In defining "racketeering activity," Title 18 U.S.C. §1961(1) lists the predicate acts that will support a RICO claim. For the most part, the Plaintiffs are relying on assertedly false representations which are alleged to have been made through the mails, as well as extortion, which are both listed as predicate acts. See, Title 18 U.S.C. §1961(1). However, "litigants pleading RICO violations must allege the time, place, and content of all false representations." See, McMaster v. Minnesota, 819 F. Supp. 1429, 1442

(D. Minn. 1993). This the Plaintiffs have failed to do. Rather, they tirelessly assert broad, conclusory suspicions about the contents of unidentified telephone calls, correspondence, and conversations. Other than to string together a series of bald assertions under a RICO umbrella, the Plaintiffs have not particularized any cognizable "criminal enterprise," nor have they identified any recognized pattern of racketeering activity. In sum, the Plaintiffs' RICO allegations are legally deficient, even if they had been timely proposed.

We wish to make clear that, given the untimeliness of their proposed amendment, we do not now catalog each deficiency, or even each significant deficiency, in the Plaintiffs' proposed amendments. Rather, we merely note that the pleading, which has been proposed by the Plaintiffs, employs the legal jargon unique to various causes of action but, when scrutinized under the prism of an "actual case or controversy," the Plaintiffs' claims rise to no more than articulated grumbles and gripes.[2]

---

[2]As but one example, the Plaintiffs seek to join Lasley, the City of Duluth's Building Official, as a Defendant in this action, and they allege that, among other matters, he engaged in acts of extortion. As best as we can decipher, these acts of extortion were allegedly perpetrated against a David Koskinen, a Jennifer Huntley, a William Pollard, an Edward Kale, and a Donald Letourneau. See, <u>First Amended Complaint</u>, Seventh Cause of Action at pp. 16-18. Characteristically, none of these acts have any clear or direct connection to any of the Plaintiffs. Rather, with respect (continued...)

Lastly, we recognize that the Plaintiffs appear here without legal representation, but that does not excuse the inadequacies of their compliance with the Court's Scheduling Order, or the fatal defects in their proposed pleading. See, McNeil v. United States, 508 U.S. 106, 113 (1993)("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); Lindstedt

---

[2](...continued) to Lasley's purported involvement with the Plaintiffs, they merely allege that he threatened condemnation of various buildings, he exercised wrongful force and fear, and he deprived Ringsred, during the Trial in State Court, of "meaningful access to Courts." If access were denied to Ringsred, then these were claims that either were, or should have been, prosecuted in his State Court actions. As we have observed, "old wine in a new bottle."

Similarly, the Plaintiffs broadly accuse certain of the Defendants of violating "restraint of trade laws," but they have not set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." See, Rule 8(a)(2), Federal Rules of Civil Procedure. Instead, the Plaintiffs generally "cry foul" but they do not suggest, let alone plead, facts that would identify the substantive basis for the "foul" they have proclaimed. In another instance, the Plaintiffs have complained about the valuations of their properties for real estate tax purposes, even though a State avenue of redress was available to them. In reality, upon questioning at the Hearing, the Plaintiffs admitted that their resort to the proper State process resulted in a tax assessment which, apparently, they did not contest further. The Plaintiffs offer no reason why these errant claims, which serve no function other than to needlessly tax the resources of the parties and the Court, should be advanced at this late date. While one could argue that meritless claims would not divert the attention of experienced lawyers -- and, therefore, should be allowed to proceed -- such an argument ignores the national outrage at wasteful, frivolous litigation, not to mention the mandate of Rule 1, Federal Rules of Civil Procedure.

v. City of Granby, 238 F.3d 933, 937 (8th Cir. 2000)("A pro se litigant is bound by the litigation rules as is a lawyer * * *."); Schooley v. Kennedy, 712 F.2d 372, 373 (8th Cir. 1983)("Although pro se pleadings are to be construed liberally, pro se litigants are not excused from compliance with relevant rules of the procedural and substantive law."), citing Faretta v. California, 422 U.S. 806, 834-35 n. 46 (1975). Here, notwithstanding our finding that the Motion to Amend was untimely without cause, we have indulgently reviewed the Plaintiff's proposed claims and find them to be futile. Accordingly, the Plaintiff's Motion to Amend, so as to join an additional Defendant, as well as a plethora of State and Federal substantive claims, is denied.[3]

B. The Motion to Amend the Complaint to Add a Claim for Punitive Damages.

The Plaintiffs have not designated their causes of action, either proposed or as presently pled, which are the bases for their request to assert a claim for punitive damages. However,

---

[3]We note that Ringsred is an educated and articulate litigant, and is no stranger to legal proceedings, both when represented by legal counsel, and when proceeding pro se. See, e.g., Ringsred v. City of Duluth, 828 F.2d 1305 (8th cir. 1987); Ringsred v. Dole, 828 F.2d 1300 (8th Cir. 1987); Duluth Steam Cooperative Ass'n v. Ringsred, 519 N.W.2d 215 (Minn.App. 1994); State of Minnesota, by Eric Ringsred v. City of Duluth, 1999 WL 618613 (Minn.App., August 17, 1999). We have no reason to believe that the baseless nature of the assertions, which he now wishes to weave into this action, could have escaped his attention.

we draw some guidance from the fact that they employ the framework of Minnesota Statutes Sections 549.191 and 549.20 to advance that request. While we, once again, deny this Motion on the basis of its untimeliness, we proceed to analyze, as we have previously, the Plaintiffs' Motion on a substantive basis.

Under Section 549.191, a plaintiff who seeks to assert a punitive damage claim, under the laws of Minnesota, must first obtain leave of the Court to do so, based upon a prima facie showing of entitlement. See, Ulrich v. City of Crosby, supra at 867. A plaintiff need not demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages.[4] See, Olson v. Snap Products, Inc., 29 F. Supp.2d 1027, 1034 (D. Minn. 1998). As the Statute provides, a Court "shall grant a Motion to amend to allege punitive damages if it finds prima facie evidence in support of the motion." Bunker v. Meshbesher, 147 F.3d 691, 696 (8th Cir. 1998)[quotations omitted].

In order to establish a claim for punitive damages, a party must show, by clear and convincing evidence, that the Defendant

---

[4]Under the strictures of Section 549.191, "the Court reviews the evidence in support of a Motion to Amend as the Court would review a Motion for a Directed Verdict * * *." Ulrich v. City of Crosby, supra at 867; see also, Swanlund v. Shimano Indus., Corp., Ltd., 459 N.W.2d 151, 154 (Minn.App. 1990). Thus, as we have observed in prior cases, in reaching such a determination, the Court makes no credibility rulings, and does not consider any challenge, by cross-examination or otherwise, to the Plaintiffs' proof. Id.

acted with a "deliberate disregard for the rights or safety of others." Minnesota Statutes Section 549.20, Subdivision 1(a). The pivotal term "deliberate disregard" has been statutorily defined as follows:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the Defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minnesota Statutes Section 549.20, Subdivision 1(b).

In substance, "[a] defendant operates with 'deliberate disregard' by acting with intent or indifference to threaten the rights or safety of others." Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1256 (8th Cir. 1994). As such, "[a] mere showing of negligence is not sufficient" to sustain a claim of punitive damages. Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan, 494 N.W.2d 261, 268 (Minn. 1992).

In addition, under the Section 549.20 standard, the Court "is required to search for evidence which is 'clear and convincing.'" Olson v. Snap Products, Inc., supra at 1036. "To be 'clear and

convincing,' there must be 'more than a preponderance of the evidence but less than proof beyond a reasonable doubt.'" Ulrich v. City of Crosby, supra at 868, quoting Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978). Ultimately, the Court's independent search for clear and convincing, prima facie evidence, that the Defendant acted with a deliberate disregard for the rights or safety of others, requires the Court to do more than "rubber stamp" the allegations in the Motion papers. Id.; Swanlund v. Shimano Indus. Corp., Ltd., 459 N.W.2d 151, 154 (Minn.App. 1990).

Here, the Plaintiffs have not presented any such prima facie showing. In fact, the Plaintiffs only reason for bringing this Motion now appears to rest in their belief that they may be barred from amending their Complaint, so as to plead punitive damages, at a later time. Specifically, the Plaintiffs have stated:

> [Such an amendment] would logically be left until some discovery or testimony [has] taken place, but that * * * runs counter to the trial schedule. Both the original and amended Complaint allege intentional wrong-doing, which clearly meets the long-established standards for punitive damages. Verification of the supporting facts will necessarily take place with discovery and trial.

Plaintiffs' Memorandum in Support of Motions, at 3.

Thus, the Plaintiffs merely rely on their bald allegations of intentional wrongdoing, because of their misapprehension concerning

their ability to seek such an amendment, upon a showing of cause, after the deadline established by the Court's Pretrial Schedule.

In the absence of any prima facie showing, that punitive damages may competently be claimed in this action, we are unable to grant the leave they request, even if their Motion had been timely filed. Of course, we express no opinion as to whether good cause can subsequently be shown to allow a renewed request should the Plaintiffs mount a prima facie showing, predicated on clear and convincing evidence, that a claim for punitive damages would be warranted. For now, we deny their present Motion to plead such a claim.

C. The Motion to Allow Videotaping of Depositions.

The Plaintiffs seek permission to videotape some or all of the depositions in this case. As we related at the Hearing, videotaping of depositions is permissible in Federal Court, see, Rule 30(b)2), Federal Rules of Civil Procedure, and the Defendants have not objected to such a procedure.[5] Whether, in any particular circumstance, the Court should limit the videotaping of a deposition, is a matter we cannot address by an advisory opinion. We merely conclude that, if the requisites of the pertinent Federal

---

[5]The Defendants only argue that the Plaintiffs should have to bear the cost of such videotaping, and should be required to provide the Defendants with a copy of the videotape. Since that issue is not ripe for determination, we leave it for another day.

Rules are satisfied, a videotape deposition may be taken for discovery purposes, or in lieu of an in-Court appearance, if no cause for a Protective Order, that is warranted by specific facts, is presented to the Court. See, Rule 26(c), Federal Rules of Civil Procedure.

D. The Motion for Sanctions Against the Government Defendants.

The Plaintiffs allege that a letter, which the Government Defendants transmitted to the Court, evinces incivility and over-aggression on the part of those Defendants. The Plaintiffs ask that we forewarn the Government Defendants that further sanctions could be imposed, as an exercise of our "inherent power to sanction." The referenced letter noted that the Plaintiffs had failed to serve their original Motion to Amend on the City Attorney and, instead, served it on the City Clerk's office.[6] The Assistant City Attorney concluded the letter as follows:

> Since Mr. Ringsred is an experienced pro se litigant, has in the past exhibited a knowledge and understanding of the rules of procedure, and has in other matters observed the requirement of service upon legal counsel rather than the party, I can only assume that delivery to the clerk's office was a deliberate effort to delay delivery to this office.

See, Letter Attached to Plaintiffs' Memorandum in Support of Motions.

---

[6]This fact did not impact upon the timeliness of the Plaintiffs' original Motion to Amend.

The Plaintiffs represent that they attempted to serve the City Attorney, but that they were told that they needed to serve the City Clerk. As related by the Assistant City Attorney though, the Plaintiffs did not explain that they were serving a Motion, which needed to be served on legal counsel, rather than a Complaint, which must be served upon an appropriate representative of the City -- namely the City Clerk.

We find this maelstrom of miscommunication, between the Government Defendants, and the Plaintiffs, to be an inappreciable basis upon which to exercise our formidable sanction powers. We add, nonetheless, that the Court is an instrument of justice, and not of abuse. All sides should take care to conduct themselves in a professional, courteous, and cooperative manner, in all phases of the action, inclusive of pleading, discovery, Motion practice, and Trial. Should the proper occasion arise, we will not be hesitant to preserve the integrity of our processes, by the just exercise of our disciplinary authority. "In the language of Cervantes, 'a word to the wise is enough.'" Marvin Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 643 n. 1 (D. Minn. 1996), quoting Don Quixote, Part II, Book IV, Chapter 37, at page 692. At this time, we deny the Plaintiffs' Motion for Sanctions.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiffs' Motion to Amend their Complaint [Docket No. 28] is DENIED.

2. That the Plaintiffs' Motion to Add a Claim for Punitive Damages [Docket No. 28] is DENIED.

3. That the Plaintiffs' Motion to Videotape depositions [Docket No. 28] is GRANTED.

4. That the Plaintiffs' Motion for Sanctions [Docket No. 28] is DENIED.

AND, It is --

RECOMMENDED:

That the Plaintiffs' Motion, in effect, to Voluntarily Dismiss the claims of Anne, Miles, Anders, and Odin Ringsred [Docket No. 28], be granted.

Raymond L. Erickson
Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 30, 2001**, a

writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 30, 2001**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.