**UNITED STATES DISTRICT COURT**
OFFICE OF THE CLERK
**DISTRICT OF MINNESOTA**
FIFTH DIVISION
DULUTH, MN 55802-1397

**RICHARD SLETTON, CLERK**
(218) 529-3500
FAX 529-3505

417 FEDERAL BUILDING
515 WEST FIRST STREET

# FACSIMILE COVER SHEET

DATE: 10/23/01

ATTN: Counsel

NO. OF PAGES : 61
(INCLUDING THIS PAGE)

FROM: Marcy Bruckelmyer, Deputy Clerk
EMAIL: Marcy_Bruckelmyer@mnd.uscourts.gov
PHONE #: (218) 529-3501
FACSIMILE #: (218) 529-3505

COMMENTS: *This fax will be coming to you in 2 parts, 1-31 and then 31-60. Please contact me if you do not receive all of this Order. Have a great day!*

Sensitivity:
__X__ Nonsensitive
______ Sensitive
______ "Eyes Only"

The information contained in this facsimile is intended only for the individual or organization named above and may contain confidential or privileged information. If you are not the intended recipient, any dissemination, distribution or copying of this communication is prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the return of all documents transmitted.

**Visit us on the Internet at:** www.uscourts.gov and www.mnd.uscourts.gov

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER
and
REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * * *

Eric Ringsred, an individual and a state, federal and local taxpayer, State of Minnesota, by Eric Ringsred, and Deborah Ringsred,

Plaintiffs,

vs.

City of Duluth, a municipal corporation, and the following City Officials, individually and in their official capacities, Mayor Gary L. Doty; Cynthia Albright, Assistant City Attorney; Brian Brown, City Attorney; Robert Asleson, Assistant City Attorney; John Schweiger, Special Projects Manager; John Smedberg, Assistant City Attorney; Duluth Economic Development Authority, and its Director, Cynthia Albright, individually and in her official capacity; Team Duluth; Soft Center-Duluth, Inc.; Michael McNamara; Duluth Area Chamber of Commerce and David Ross, CEO,

Defendants. Civ. No. 00-2241(RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 22nd day of October, 2001.

117 118

FILED OCT 22 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A) and (B), upon the numerous Motions of the parties. As there are a number of different Defendants in the case, for the sake of clarity, we first categorize the Defendants into relevant groupings, and then proceed to delineate the Motions of the parties.

The first cluster of Defendants may be denominated as the "Government Defendants," which includes the City of Duluth and its City officials, in both their individual, and official capacities; namely, Gary Doty, Cynthia Albright, Bryan Brown, Robert Asleson, John Schweiger, and John Smedberg, together with the Duluth Economic Development Authority ("DEDA"). A second grouping may be designated as the "Soft Center Defendants," to include the Soft Center-Duluth, Inc., and Michael McNamara, as an employee of the Soft Center-Duluth. The last category is comprised of the "Chamber Defendants," which includes the Duluth Area Chamber of Commerce, Team Duluth, David Ross and, in a separate capacity, Michael McNamara. The Plaintiffs, and each grouping of Defendants, have filed Motions which we list as follows:

> 1. The Motion of the Government Defendants to Dismiss or, in the alternative, for Summary Judgment.

2. The Motion of the Plaintiffs[1] to Compel the Appearance of the Individual Government Defendants at a Deposition, and the Obverse Motion of the Individual Government Defendants for a Protective Order.[2]

---

[1]The Plaintiff Eric Ringsred ("Ringsred"), brings this action on his own behalf, both as an individual, and as a Federal, State, and local taxpayer, as well as on behalf of the State of Minnesota. Deborah Ringsred, who is the wife of Ringsred, has asserted a claim for the loss of quantity and quality of time with her husband, as well as injuries suffered as a result of damage to Ringsred's reputation. Deborah Ringsred has not expressly joined in advancing the Motions filed by Ringsred, as she has not signed any of the Motion papers, nor has she argued any Motion in open Court. Accordingly, we will address the Plaintiffs' position jointly, except when we consider one of their claims which affects either of them individually.

[2]On April 3, 2001, the Plaintiffs served deposition notices on the individual Government Defendants, which set the dates of their depositions for April 23 through 25, 2001. Thereafter, on or about April 22, 2001, the Government Defendants served their Motion to Dismiss or, in the alternative, for Summary Judgment, which was based, in part, on a claim of qualified immunity. They consequently advised the Plaintiffs that they would not appear for the noted depositions.

Instead of filing a timely responsive pleading to the Motion to Dismiss, the Plaintiffs filed a Motion to Compel the Government Defendants to appear for their depositions. In turn, the Government Defendants filed a Motion for a Protective Order, which sought protection from being deposed, and which urged that, since their dispositive Motion was predicated on a claim of qualified immunity, they should be shielded from suit for their discretionary governmental acts, unless their conduct should violate clearly established statutory or constitutional rights of which a reasonable person would have known. See, Wilson v. Layne, 526 U.S. 603, 609 (1999), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The defense of qualified immunity protects not only against liability, but also against litigation. See, Hunter v. Bryant, 502 U.S. 224, 227 (1991), citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Engle v. Townsley, 49 F.3d 1321, 1323 (8th Cir. 1995); Moore v. Web-
(continued...)

3. The Motion of the Plaintiffs to File an Untimely Memorandum in Opposition to the Governmental Defendants' Motion for Dismissal.[3]

4. The Motion of the Government Defendants for Leave to File an Untimely Reply Memorandum.[4]

---

[2](...continued)
ster, 932 F.2d 1229, 1232 (8th Cir. 1991). Thus, Courts have tailored Protective Orders to prevent unnecessary discovery into the merits of a plaintiff's claim, while still allowing discovery regarding the qualified immunity defense. See, Maxey v. Fulton, 890 F.2d 279, 282 (10th Cir. 1989); Felak v. United States, 661 F. Supp. 51, 53-54 (D. Minn. 1987); c.f. Haenchen v. Riley, 994 F.2d 842, 1993 WL 169051 at *1 (8th Cir. 1993)("However, we note that discovery is appropriate where 'the parties disagree as to what actions the law enforcement officers took and if the plaintiff can present some evidence to support [his] allegations.'")[unpublished decision]. Otherwise, such discovery on the merits of a claim would only erode the qualified immunity defense. See, Maxey v. Fulton, supra at 281.

As the Governments' Motion for a Protective Order was to prevent discovery pending the Court's decision on the Motion to Dismiss, it is now mooted by the Recommendation we make. Thus, we deny the Plaintiffs' Motion to compel depositions, as well as the Government Defendants' Motion for a Protective Order, as moot, but without prejudice to their renewal, if otherwise warranted, should our Recommendation be rejected by the District Court.

[3]The Plaintiffs were obligated to serve and file their responsive Memorandum to the dispositive Motion of the Government Defendants on May 17, 2001. However, due to an apparent misunderstanding on the Plaintiffs' part, they did not file their Memorandum until May 22, 2001, and they requested leave to file their untimely submission on that same day. In the interests of being fully informed, we previously granted the Plaintiffs' Motion to File their untimely Memorandum, and now formally record that ruling.

[4]Owing to the Plaintiffs' late filing of their Memorandum in Opposition to the Government Defendants' Motion to Dismiss, the (continued...)

5. The Motion of the Plaintiffs to Amend the Scheduling Order of December 1, 2000, so as to Allow an Amendment of the Complaint, and their Motion to Amend Their Complaint.[5]

---

[4](...continued)
Government Defendants requested leave to file an untimely Reply Memorandum and, since the Government Defendants' Reply is untimely, through no fault of their own, we previously granted this Motion, and now formally record that ruling.

[5]This is the Plaintiffs' second attempt to amend their Complaint, and follows our earlier rejection of their first attempt as being both untimely, and futile -- a decision which was adopted by the District Court. As explained by the Plaintiffs, they believe that an amendment of their Complaint would disarm much of the dispositive Motion of the Government Defendants, which is premised, in part, on the shortcomings of the Plaintiffs' Complaint.

In our Scheduling Order of December 1, 2000, the deadline for amending the pleadings was set for February 1, 2001. Where, as here, the deadline for the amendment of pleadings has since expired, the propriety of a Motion for leave to amend "is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure." Alholm v. American Steamship Co., 167 F.R.D. 75, 77 (D. Minn. 1996). Thus, the Plaintiffs must show the "good cause," which is required by Rule 16(b), if they are to be allowed to amend their Complaint on an untimely basis. Rule 16(b), Federal Rules of Civil Procedure ("A schedule shall not be modified except upon a showing of good cause * * *."). Once again, the Plaintiffs have failed to demonstrate good cause for their belated Motion to Amend.

While the Plaintiffs contend that the Motion of the Government Defendants to Dismiss was untimely, they are mistaken, as the applicable dispositive Motion deadline was September 15, 2001, and the Motion was heard well in advance of that date. Moreover, the bases for the Government Defendants' Motion were not waived, as the Plaintiffs argue, as those grounds for dismissal were asserted in their respective Answers to the Plaintiffs' Complaint. See, Rule 12(b), Federal Rules of Civil Procedure ("No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion."). More importantly, the
(continued...)

6. The Motion of the Soft Center Defendants for Summary Judgment.

7. The Motion of the Chamber Defendants for Summary Judgment.

8. The Motion of the Government Defendants for Rule 11 Sanctions.

9. The Informal Motion by the Defendants to Strike.[6]

---

[5](...continued)
Plaintiffs had notice that the Government Defendants found their Complaint substantially lacking, as the issue was addressed at the Initial Pretrial Conference. The Plaintiffs' first attempt to amend their Complaint, while late and largely futile, was an attempt to cure the deficiencies which were then noted. Thus, if the Plaintiffs had asserted such a Motion to Amend in a timely fashion, they would have been afforded an opportunity to clarify their claims, and add others, so long as those claims were not legally futile. Accordingly, finding no good cause to allow the requested late amendment, we deny the Plaintiffs' Motion to Amend the Scheduling Order and, resultantly, their second Motion to Amend their Complaint.

[6]On July 19, 2001, this Court heard the Motion by the Chamber Defendants for Summary Judgment, as well as the Government Defendants' Motion for Rule 11 Sanctions. Thereafter, on July 31, 2001, and again on August 13, 2001, the Plaintiffs submitted additional materials for the Court's consideration. The materials address many of the issues raised in the three Hearings before this Court. As a consequence, the Defendants request that the additional materials be stricken from the Record. While we did invite the Plaintiffs to submit any additional authority, following the Hearing of July 19, 2001, we granted such leave with respect to the issues raised during that Hearing. Further, we did not invite the submission of new evidence, but only such case authority as they felt supported their arguments at that Hearing. Therefore, we have considered the relevant case authorities presented in the Plaintiffs' post-Hearing submissions, but we have not considered the substance of the newly presented factual materials and, to that extent, we grant the Defendants' informal Motion to Strike.

Hearings on the Motions were conducted on May 31, 2001, June 28, 2001, and July 19, 2001, at which the Plaintiffs appeared pro se; the Government Defendants appeared by M. Alison Lutterman, Assistant Duluth City Attorney; the Soft Center Defendants appeared by Faye M. Witt and James A. Wade, Esqs.; and the Chamber Defendants appeared by R. Thomas Torgerson, Esq.

As to the Motions which remain for disposition, we recommend that the Motion of the Government Defendants to Dismiss, for want of subject matter jurisdiction be granted; that the Motions for Summary Judgment of the Soft Center Defendants, and of the Chamber Defendants, be granted; and we deny the Motion of the Government Defendants for Rule 11 Sanctions.

## II. Factual and Procedural History

The Plaintiffs bring this action under Title 42 U.S.C. §1983, and allege that the Defendants have violated various Federal, State and local laws, and have infringed upon their Federal constitutional rights. The crux of their claims arise from certain actions which, allegedly, were taken by the Defendants during prior litigation involving both the Plaintiff Eric Ringsred ("Ringsred"), and a number of the Defendants here. Specifically, in May of 1998, Ringsred brought suit in Minnesota District Court, on behalf of the State of Minnesota, and against the City of Duluth, DEDA, Mayor Gary Doty, and others, under the Minnesota Environmental Rights

Act, Minnesota Statutes Section 116B.01 et seq. ("MERA"), and the Minnesota Environmental Policy Act, Minnesota Statutes Section 116D.01 et seq. ("MEPA"). According to Ringsred, the purpose of that earlier suit was to protect buildings, which were located in the "Duluth Commercial Historic District," from a demolition designed to make space for the erection of the "Soft Center/Technology Village" project.

Ringsred's suit, on behalf of the State, was premised upon the following Minnesota statutory provision:

> Any person residing within the state * * * may maintain a civil action in the District Court for declaratory or equitable relief in the name of the State of Minnesota against any person, for the protection of the air, water, land or other natural resources located within the state, whether publicly or privately owned, from pollution, impairment, or destruction; provided, however, that no action shall be allowable hereunder for acts taken by a person on land leased or owned by said person pursuant to a permit or license issued by the owner of the land to said person which do not and can not reasonably be expected to pollute, impair, or destroy any other air, water, land, or other natural resources located within the state.

Minnesota Statutes Section 116B.03, Subdivision 1.[7]

---

[7]Ringsred's State Court action was also predicated on the following statutory provision:

> Decisions on the need for an environmental assessment worksheet, the need for an environmental impact statement and the adequacy of an

(continued...)

In particular, Ringsred sought, on behalf of the State of Minnesota, to enjoin the "Soft Center/Technology Village" project, and to require the City to prepare an Environmental Impact Statement ("EIS"). The Trial Court issued two Temporary Restraining Orders, and then held a Trial on the merits during September and October of 1998. On October 5, 1998, the Trial Court issued an Order, which found the area in dispute -- the 0 to 100 block of East Superior Street, which was referred to as "Old Downtown" -- constituted a "natural resource"[8] under MERA.[9]

---

[7](...continued)

> environmental impact statement may be reviewed by a declaratory judgment action in the district court of the county wherein the proposed action, or any part thereof, would be undertaken.

Minnesota Statutes Section 116D.04, Subdivision 10.

[8]MERA defines "natural resource" as follows:

> Natural resources shall include, but not be limited to, all mineral, animal, botanical, air, water, land, timber, soil, quietude, recreational and historical resources.

Minnesota Statutes Section 116B.02, Subdivision 4.

[9]It appears that the actual portion of "Old Downtown," which the Trial Court deemed a "natural resource," is larger than the 0 to 100 block of East Superior Street, although the exact dimensions are not known to this Court. See, State of Minnesota, by Ringsred v. City of Duluth, C3-98-601186, Findings of Fact, Conclusions of Law and Order for Judgment, at 37 (Minn. Dist. Ct. October 5, 1998). However, as pertinent to this case, we are concerned primarily with the activities in the 0 to 100 block -- that is, the epicenter of the Soft Center/Technology Village Project -- as those (continued...)

Notwithstanding that ruling, however, the Trial Court also determined, after conducting the equivalent of an Environmental Assessment Worksheet ("EAW"), that the Soft Center/Technology Village project should proceed. The Court reasoned that the project would not have a significant impact on the denoted "natural resource" and, further, that any effect would further diminish over time. The Court also found that there was no feasible alternative site, in the City, for the project, and that the project would yield substantial economic and educational benefits to the City, and its citizens. Thus, the Trial Court allowed the project to advance, thereby allowing the demolition of five buildings, located on the future site of the project, but imposing a mandatory injunction which required the defendants, in that case, to confer the 0 to 100 block of East Superior Street with the environmental protections befitting a "natural resource."[10] Ringsred appealed the Trial

[9](...continued)
activities were the core of Ringsred's State Court proceeding.

[10]In pertinent part, the Trial Court ordered:

> That portion of Duluth depicted upon the outlined portion of Exhibit 23, attached hereto as Attachment A, consisting of a historical resource and therefore being a "natural resource," defendants and each of them, are ordered and directed to accord such district so delineated and any structures located therein constructed between 1880 and 1930
>
> (continued...)

Court's Order to the Minnesota Court of Appeals, which affirmed the Trial Court's decision in all respects. See, State of Minnesota, by Ringsred v. City of Duluth, 1999 WL 618613 (Minn. App. August 17, 1999)[publication page references not available]. No further appeal was taken.

By way of additional background, in September and October of 1998, prior to the Trial of the State Court action, Ringsred sought a Temporary Restraining Order so as to prevent the destruction of the Strand Theater, which was located within the area that was ultimately determined, by the Trial Court, to be a "natural resource," but it was not one of the five buildings which were scheduled for demolition at the site of the planned Soft Center/Technology Village. See, Affidavit of Robert Asleson, at ¶1. Nonetheless, Ringsred sought a Temporary Restraining Order in order

---

[10](...continued)
those protections accorded to natural resources under Minnesota environmental laws including, without limitation, chapters 116B and 116D of the Minnesota statutes. Such protection shall be accorded as any and all activities are carried out by them or under their direction or control with regard to or as a part of the construction of the Soft Center project including: the Soft Center building, the related parking ramp, the related skywalk, utilities and any and all other construction or demolition activities related to the Soft Center project within or affecting the delineated district set fourth on attachment A hereto.

to protect the Strand Theater from destruction. As alleged by Ringsred, when the defendants in the State Court action learned about his Motion, they preemptively destroyed portions of the Strand Theater. Although the Temporary Restraining Order was later issued, it was subsequently lifted because, as related by Ringsred, the Court found that there had already been substantial damage to the building, and there was, as alleged by Ringsred, perjured testimony, from the City, that no buyers could be found for the property.

Ringsred further contends that, during the Trial of the State Court action, the defendants in that case conducted meetings with individuals who were listed as witnesses for Ringsred, and also conducted an advertising campaign to promote the Soft Center/Technology Village. Ringsred asserts that, in one instance, the State Court defendants attempted to prevent one witness, Jill Fisher ("Fisher"), from testifying at the Trial, and threatened another witness, Sheldon Aubut ("Aubut"), with physical injury and damage, because of his testimony. There is no allegation, however, let alone a showing, that either witness did not testify at the Trial, or that either one of them gave false testimony as a result of the purported threats.

In December of 1998, Ringsred returned to the State Court, and sought a Temporary Restraining Order to enforce, in effect, the

mandatory injunction that the Trial Court had issued as part of its Order of October 5, 1998. According to Ringsred, the defendants were set to demolish three buildings, which he believed fell within the confines of the mandatory injunction, but which the defendants had failed to treat as a "natural resource," as required by the State Court's mandatory injunction. Ringsred maintains that the Hearing on that Motion was to occur at 11:00 o'clock a.m., on December 28, 1998, but that the defendants preemptively demolished the three buildings at 10:00 o'clock a.m., without a building demolition permit, without soliciting competitive bids, and without governmental approval of the expenditure. Notwithstanding Ringsred's assertions, the State Court denied the Temporary Restraining Order, as being without a sufficient showing for the equitable relief that Ringsred was requesting. See, State of Minnesota, by Ringsred v. City of Duluth, C3-98-601186, Order, at 3 (Minn. Dist. Ct. December 28, 1998).[11] Indeed, in its decision of August of 1999, the Minnesota Court of Appeals expressly observed that "the trial court ha[d] issued a mandatory injunction as to the remainder of the [Soft Center] project and Ringsred has made no showing that

---

[11]The Orders of the State Courts which dealt with Ringsred's earlier claims, and certain of the Motion papers, and papers on Appeal, are attached to several Affidavits in this Record. Accordingly, we reference the document we cite, but do not specify one Affidavit, or another, as the repository of the document.

respondents have violated the law or the trial court's mandate," and that "Ringsred has shown no environmental violation as to the work in process." State of Minnesota, by Ringsred v. City of Duluth, 1999 WL 618813 (Minn. App. August 17, 1999)[publication page references not available].

In December of 1999, Ringsred filed, in State Court, a Motion for an Order to Show Cause, and an Application for Sanctions, against the defendants, there, contending that they had violated various Minnesota Statutes, including the giving of false testimony concerning Federal funding for the Soft Center project, and regarding potential buyers and users for the Strand Theater; the preemptive demolition of the Strand Theater; the conduct of prejudicial pretrial meetings with Ringsred's witnesses; the dissemination of prejudicial pretrial publicity; the threatening of Ringsred's witnesses; the interference with the service of a subpoena on one of Ringsred's witnesses; the disobedience of the Court's mandatory injunction; the misrepresentation of facts during the Hearing on Ringsred's Motion for a Temporary Restraining Order; the demolition of a building without a building permit; the demolition of a building without authorization by the DEDA; the demolition of a building without taking competitive bids; and the attempt to "cover up" the failure to take competitive bids. See, State of Minnesota, by Ringsred v. City of Duluth, C3-98-601186, Affidavit of Eric

Ringsred No. 3 to Motion for Order to Show Cause and Apply Sanctions.

The State Trial Court denied Ringsred's request to sanction the defendants, or to have them show cause why they should not be held in contempt of that Court, because most of his allegations were based on hearsay, and because, in the Court's view, a Motion for an Order to Show Cause, and for Sanctions, was an inappropriate means of raising such issues, as discovery would need to proceed if the claims were cognizable. The Court specifically noted that "[m]any of the issues which plaintiff raises could well be the subject of separate proceedings subject to the rights and responsibilities of the parties under our Rules of Procedure including those applicable to discovery." See, State of Minnesota, by Ringsred v. City of Duluth, Civ. No. C3-98-601186, Order Regarding Motion for Order to Show Cause and Contempt, at 7 (Minn. Dist. Ct. January 10, 2000). No appeal from the State Court's denial of Ringsred's Motion for Sanctions, and for Contempt of Court, was taken.

The Plaintiffs have also alleged that, in January of 2000, the Defendants publicly accused Ringsred of "frivolous litigation." As phrased by the Plaintiffs, "[f]irst the local news media, then Ringsred himself, were notified of a threat by Defendants against

him for Court sanctions to limit his ability to litigate issues of personal and public concern." Complaint, at ¶7.

Thereafter, on October 3, 2000, the Plaintiffs commenced this action, against the Government Defendants, the Soft Center Defendants, and the Chamber Defendants, contending that they had violated Ringsred's right of access to the Court, as guaranteed by the First Amendment, as well as the Due Process, and Equal Protection Clauses, of the United States Constitution. The Plaintiffs have further alleged, without specificity, that the Defendants have violated various Federal, State, and local laws, and have engaged in unlawful recruitment of local businesses for the Soft Center facility. In addition, the Plaintiffs assert that the Defendants actions have damaged the reputation of Ringsred, by stating, to the public, that Ringsred was conducting "frivolous litigation," and by threatening sanctions as a consequence of such frivolousness. Lastly, the Plaintiffs maintain that the conduct of the Defendants has caused injury to the family of Ringsred, such as emotional distress, loss of time, money, and effort. As a result, the Plaintiffs ask for the following damages:

> 1. Compensatory damages to Ringsred in excess of $50,000;
>
> 2. Damages for lost time, lost enjoyment of life and property, and emotional distress, both past and future;

> 3. Exemplary damages upon the Plaintiffs' Motion;
>
> 4. Damages to the people of the State of Minnesota by Ringsred, to be held in trust for the purpose of mitigation to the "Duluth Commercial Historic District," in the amount of $10 million; and
>
> 5. Exemplary damages to the people of the State of Minnesota by Ringsred, upon the Plaintiffs' Motion;
>
> 6. Damages to Deborah Ringsred for loss of reputation, and of quality and quantity of time given to her by Ringsred in the amount of $10,000;
>
> 7. A declaration that the Defendants' are not in compliance with the "Mandatory Injunction" issued by the State Court on October 5, 1998, and commanding future compliance;
>
> 8. An Order commanding detailed compliance with the State Court Order mandating conformance with MEPA and MERA in respect to proposed skywalk construction within the Duluth Commercial Historic District;
>
> 9. Exemplary damages to Federal, State, and local taxpayers, upon the Plaintiffs' Motion;
>
> 10. An award of costs, disbursements, reasonable attorney's fee or their equivalent, and such other relief as the Court deems just and equitable.

Complaint, at ¶¶35-40.

In response to the Plaintiffs' Complaint, the Government Defendants have moved to dismiss the Complaint, or for a grant of Summary Judgment, on a number of different bases, including a claimed lack of subject matter jurisdiction, a failure to state a claim upon

which relief can be granted, and on the basis of qualified and absolute immunity.

The Soft Center Defendants, and the Chamber Defendants, seek Summary Judgment, as the Soft Center Defendants contend that the Plaintiffs have not identified any complaints that they have against them and, together with the Chamber Defendants, contend that they were not acting "under color of state law" and, therefore, cannot be held liable under Section 1983. In addition, the Government Defendants seek Rule 11 Sanctions against Ringsred, arising out of his attempt to file of a second Motion to Amend the Complaint.

Notably, the Plaintiffs allege no occasion when they were unable to present claims, or evidence in support of any claim, to the State Court, or where they have declined to advance a claim, make an argument, or otherwise petition a Court for relief, on account of some fear of retaliation at the hands of the Defendants. Rather, the Plaintiffs suggest, by mere inference, that the result reached by the State Court would have been different had the Defendants not engaged in the acts of which they are accused. Insofar as we are aware, and our research has been extensive, this is a case of first impression.

Some learn from history, others are content to relive it. In this instancc, any regression, so as to relitigate the past, is

foreclosed by controlling Federal precedent. After a painstaking review of the Record presented, we can applaud the Plaintiffs for the novelty of their claims, but we conclude that none of their causes of action can survive the Defendants' dispositive Motions and, therefore, we recommend that those Motions by granted. Further, we deny the Government Defendants' Motion for Rule 11 Sanctions as being without merit.

## III. Discussion

### A. The Government Defendants' Motion to Dismiss, and/or for Summary Judgment.

The Plaintiffs' Complaint spans six pages, and contains five recognizable causes of action. Nonetheless, within those six pages, the Plaintiffs have seemingly included every unfairness that they claim to have experienced, during the course of the State litigation, because of the acts of generic defendants, as well as numerous grievances that other, nonparties, have purportedly endured. By and large, the Complaint does not differentiate between the Defendants, or specifically identify which of the Defendants purportedly committed which misdeed.[12] Moreover, many of their

---

[12]In fact, in only one instance do the Plaintiffs specifically mention a Defendant by name; specifically, the allegation that "Mayor Gary Doty has participated and encouraged violations of law and the U.S. Constitution, and abdicated his responsibility over subordinates to uphold the law and U.S. Constitution." Complaint, at ¶10.

allegations are so vague and sweeping, that they afford the Defendants with little notice, or forewarning, of the specific misconduct of which they are accused. For example, in their Second Cause of Action, the Plaintiffs state:

> Defendants individually and in combined agreement with each other by their actions above-noted, have negligently and intentionally violated civil and penal statutes including, but not limited to, professional conduct of attorneys, misconduct of public officials, coercion, witness tampering, competitive bidding for public projects, obstruction of justice, contempt of Court, abuse of legal process, and deceit-collusion-misconduct by attorneys, perjury, conspiracy to commit crimes, and failure to report misuse of public funds.

Complaint, at ¶13.

As the Plaintiffs have not cited any statutory, or other legal bases for such a claim, it largely falls of its own weight.

Section 1983 disputes, which frequently are spawned in rage or insult, lend themselves to such imprecision and vagueness. As the Court observed, in Liggins v. Morris, 749 F. Supp. 967, 971 (D. Minn. 1990):

> Constitutional claims brought under Title 42 U.S.C. §1983 are discrete claims and as such should not be pled in this shotgun manner. Almost invariably, complaints using this format are met with motions to dismiss or summary judgment under Federal Rules of Civil Procedure 12(b)(6) and 56. It is then left to the court to divine what discrete constitutional violations are in fact legitimate and proper as to each plaintiff and as against each defendant. The court must and does ferret out

> and dismiss those alleged constitutional violations that patently cannot be maintained. This process is time consuming, fraught with frustrations for both the court and counsel, and disrupts the orderly processing of legitimate claims. Although Rule 8 provides for notice pleading, it demands greater specificity than that found in this complaint or in others pled in the same manner.

Id.

The Court, in Liggins, went on to hold that "[t]he time has come for practitioners in this district to prepare complaints alleging violations of 42 U.S.C. §1983 in a fashion that will identify the specific claims of individual plaintiffs for specific constitutional violations as against only culpable defendants," and that the failure to do so will result in dismissal "for failure to comply with Rule 8 and Rule 11 of the Federal Rules of Civil Procedure." Id.

Plainly, the Plaintiffs' Complaint contravenes the holding in Liggins, but we decline to apply the proscriptions of Liggins where, as here, the Plaintiffs are not represented by legal counsel,[13] thereby obligating us to ferret out any cognizable causes of

---

[13]We note, however, that, while not a licensed attorney, Ringsred is an experienced pro se Plaintiff -- a circumstance that has not eluded the State District Court which considered his previous claims, nor our prior ruling on the Plaintiffs' first Motion to Amend their Complaint. See, e.g., State of Minnesota, by Ringsred v. City of Duluth, Civ. No. C3-98-601186, Findings of Fact, Conclusions of Law and Order for Judgment, at 39 (Minn. Dist. Ct. October 5, 1998) ("At the outset the Court wishes to commend coun- (continued...)

action, and to address the merits of any such claims. Accordingly, following a recitation of the standard that governs our review, we turn to an analysis of the claims that the Plaintiffs have raised.

1. Standard of Review. The Government Defendants advance their Motion to Dismiss, in part, on Rule 12(b)(1) and (b)(6), Federal Rules of Civil Procedure. To succeed in a Motion to Dismiss for want of subject matter jurisdiction under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either on its face, or on the factual truthfulness of its averments. See, Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge to jurisdiction, "we accept all of the factual allegations in the Complaint as true and ask whether, under those circumstances, [Federal subject matter jurisdiction exists]."

---

[13](...continued)
sel and plaintiff who has proceeded herein pro se. Mr. Ringsred, although not an attorney by training or profession, conducted himself in a manner and with a degree of professionalism and candor that any attorney would do well to emulate."); Order and Report and Recommendation of March 14, 2001, at p. 14, n. 3 ("We note that Ringsred is an educated and articulate litigant, and is no stranger to legal proceedings, both when represented by legal counsel, and when proceeding pro se. See also, Ringsred v. City of Duluth, 828 F.2d 1305 (8th Cir. 1987); Ringsred v. Dole, 828 F.2d 1300 (8th Cir. 1987); Duluth Steam Cooperative Ass'n v. Ringsred, 519 N.W.2d 215 (Minn.App. 1994); State of Minnesota, by Eric Ringsred v. City of Duluth, 1999 WL 618613 (Minn.App., August 17, 1999)."). Notwithstanding our rejection of his causes of action, as being outside of our subject matter jurisdiction, we continue in the view that Ringsred has demonstrated a keen ability to research his claims, and to effectively argue their substance.

Deuser v. Vecera, 139 F.3d 1190, 1191 (8th Cir. 1998), quoting Berkovitz v. United States, 486 U.S. 531, 540 (1988). A District Court also has the authority, in a Rule 12(b)(1) challenge to subject matter jurisdiction, to consider matters outside of the pleadings. Id. at 1191 n.3, quoting Drevlow v. Lutheran Church, Mo. Synod, 991 F.2d 468, 470 (8th Cir. 1993); Maruska v. United States, 77 F. Supp.2d 1035, 1037 n. 2 (D. Minn. 1999).

In considering a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, we accept as true, in a hypothetical sense, all of the factual allegations of the Complaint, and we view those allegations in a light most favorable to the nonmoving party -- here the Plaintiff. See, Anderson v. Franklin County, Mo., 192 F.3d 1125, 1131 (8th Cir. 1999); Riley v. St. Louis County of Missouri, 153 F.3d 627, 630 (8th Cir. 1998); Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998). Where, as here, the parties have presented the Court with matters outside of the pleadings, which the Court has not excluded, the Motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b), Federal Rules of Civil Procedure. Here, the distinction may well be without a difference, for the "matters outside the pleading," which we have considered, are the

materials generated in, by, or for, the Minnesota Courts which previously ruled upon Ringsred earlier State law claims and, therefore, as converted, the Government Defendants' Motion, under Rule 12(b)(6), essentially replicates their Motion under Rule 12(b)(1).[14]

2. Legal Analysis.

a. The Plaintiffs' First Cause of Action.

In their First Cause of Action, which is only being asserted as an action on behalf of Ringsred, the Plaintiffs contend that the Defendants have denied Ringsred a fair Trial, and access to the Courts, as well as his right to procedural due pro-

---

[14]We note that the Plaintiffs interpreted the Government Defendants' Rule 12(b)(6) Motion as being one for Summary Judgment, so they can legitimately claim no surprise, see Memorandum in Opposition to Government Defendants' Motion to Dismiss, at p. 2, and the Plaintiffs never moved the Court, pursuant to Rule 56(f), Federal Rules of Civil Procedure, for a deferral of any ruling, nor did they offer any competent showing for such a deferral. More importantly, the matters we have relied upon, namely the pleadings before, and the rulings of, the Minnesota Courts which resolved Ringsred's earlier State action, are materials of which the Court could properly take judicial notice. See, Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988), quoting MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986)("In addition to the complaint, it is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss."); see also, Piaubert v. Sefrioui, 208 F.3d 221 n.7, 2000 WL 194149 at *2 (9th Cir. 2000)[unpublished opinion]; City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3rd Cir. 1998). In any event, the recommendation we make is more properly expressed as a dismissal, for want of subject matter jurisdiction under Rule 12(b)(1) and, as to that issue, the Plaintiffs have had a full opportunity to argue their position, and to present such matters, outside the pleading, as they wanted the Court to consider.

cess, because of the Defendants' conduct during the Soft Center/ Technology Village litigation. Since these are separate stanzas to a common theme, we address them together.

As to the procedural due process claim, the Plaintiffs contend that, through the preemptive demolition of the Strand Theater, and of the three additional buildings in December of 1998, the Defendants deprived Ringsred of his property rights accorded by Minnesota Statutes Section 116B.01;[15] his rights afforded by the State Court's "mandatory injunction," which was issued in October of 1998; his real estate interest in the "natural resource," which was identified by the State Court; and his "cause of action" conferred by Minnesota Statutes Section 116B.03 -- or MERA.

In determining whether a plaintiff has properly asserted a claimed violation of due process, the first inquiry is into whether

---

[15]Minnesota Statutes Section 116B.01 provides, in pertinent part, as follows:

> The legislature finds and declares that each person is entitled by right to the protection, preservation, and enhancement of air, water, land, and other natural resources located within the state and that each person has the responsibility to contribute to the protection, preservation, and enhancement thereof. * * * Accordingly, it is in the public interest to provide an adequate civil remedy to protect air, water, land and other natural resources located within the state from pollution, impairment, or destruction.

there exists a liberty or property interest which the defendants have denied to that plaintiff. See, Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). Once we determine that a liberty or property interest has been implicated -- that is, one of constitutional dimension -- then we must determine what process was due before the Government could deprive the plaintiff of that interest. See, Cleveland Bd. of Edu. v. Loudermill, 470 U.S. 532, 541 (1985). In this case, Ringsred's claim does not survive the first prong of the analysis, as we find no property, or liberty interest, which, under the circumstances presented, was personally held by Ringsred.

In supporting this aspect of their claim, the Plaintiffs rely upon the rights that were afforded to Ringsred by MERA, and the injunctions that were issued by the District Court, which were predicated on the provisions of MERA. As the caption of the State Court case accurately reflects, the claims that Ringsred was there prosecuting were the claims of the State of Minnesota. Ringsred made no showing of any personal property interest that he was vindicating, nor does he make such a showing here. All the relief ultimately granted, or denied by the State Court, as to the substance of the claims that Ringsred was there advancing, was for, or against, the State of Minnesota. See, Minnesota Statutes Section 116B.03, Subdivision 1 ("Any person residing within the state * *

* may maintain a civil action for **declaratory or equitable relief in the name of the State of Minnesota** * * *.").

Although Ringsred claimed incidental costs, and expenses, he made no claim for personal damages, as that form of monetary relief was not available to him under the statutory law of Minnesota upon which he relied, and his claim for costs, and attorneys' fees, was denied to him. Indeed, the Trial Court ruled, and the ruling was affirmed on appeal, that Ringsred's security deposit, arising from his success in obtaining temporary injunctive relief, would not be repaid to him in full, but would be disbursed, in part, to a developer of the project so enjoined; a developer who is not here a party. In effect, any property, or liberty interest held by Ringsred, in prosecuting that case, was of a type shared by every citizen of the State of Minnesota, in whose stead he litigated the case. As a consequence, if any property or liberty interest was impaired, it was the interest of the State of Minnesota, which does not here join in the Plaintiffs' Section 1983 claim.[16]

---

[16]We are mindful that Ringsred has captioned this proceeding as one in which he purports to represent the State of Minnesota. He does not identify the jurisdictional basis for him to do so, nor even the statutory basis for advancing those interests, and we are aware of none. This is not a putative class action, nor has there been any showing that Ringsred has standing to pursue monetary damage claims on behalf of a party whom Ringsred is not empowered to represent, since he is unlicensed to practice law. Nor can it sensibly be claimed that, here, the Plaintiffs are acting as pri-
(continued...)

The Plaintiffs' claimed denial of access to the Courts can fare no better, as the interests that Ringsred was pursuing in the State Courts were representational interests, and not those he had a right to litigate in his own stead. In this respect, we find our analysis closely guided, if not controlled, by the Court's holding in Curtin v. Federal Deposit Insurance Corporation ("FDIC"), 866 F.2d 255 (8th Cir. 1989). There, an attorney in private practice, who regularly represented banks in FDIC actions, challenged the enforceability of certain FDIC practices, in a public debate with

---

[16](...continued) vate attorney generals, see Minnesota Statutes Section 8.31, Subdivisions 1 and 3, at least insofar as their Section 1983 claim is concerned. Lastly, even if the Plaintiffs could surmount these forboding hurdles to Ringsred's current claims on behalf of the State of Minnesota, it is plain that a State is not entitled to protection under either the Fourteenth Amendment, or Section 1983. See, Commonwealth of Pennsylvania v. Porter, 659 F.2d 306, 314 (3rd Cir. 1981)("The fourteenth amendment is a limitation upon the states in the interests of individuals, and section 1983 was enacted to facilitate vindication of such individual interests" and, therefore, "[t]he question is not whether either the fourteenth amendment or section 1983 protects the commonwealth neither does * * *."), cert. denied, 458 U.S. 1121 (1982); Barbara Z. v. Obradovich, 937 F. Supp. 710, 723 (N.D. Ill. 1996); 'Z' Buda v. Saxbe, 406 F. Supp. 399, 402 (E.D. Tenn. 1975)("The state is not a '* * * citizen of the United States or other person within the jurisdiction thereof * * *' within the contemplation of 42 U.S.C. §1983 * * *."); cf., Delta Special School Dist. v. State Board of Education, 745 F.2d 532, 533 (8th Cir. 1984)("A political subdivision of the state cannot invoke the protection of the fourteenth amendment against the state."); but cf., Santiago Collazo v. Franqui Acosta, 721 F. Supp. 385, 392 (D. P.R. 1989). Accordingly, even if authorized to do so, Ringsred would have no Section 1983 claim to prosecute on behalf of the Minnesota.

an FDIC representative, who defended those policies. Id. at 256. Thereafter, portions of the speakers' respective comments were reported in a local newspaper. Id. The FDIC representative objected to the accuracy of the newspaper article, and transmitted a letter to the newspaper's editor, in which he referred to "distortions and inaccuracies" in the article. Id. The FDIC representative then contacted one of the attorney's clients, and cancelled a previously scheduled meeting concerning the policy at issue. Id.

In speaking with the attorney's client, the FDIC representative informed the client that he knew about the attorney's views on the challenged policy, and then went on to state:

> This office feels that it would be nonproductive to attempt to negotiate a stipulation and consent to the issuance of the proposed Order under these circumstances. Accordingly, we are hereby cancelling the previously arranged meetings and intend to go forth with the preparation of a Notice of Charges and hearing to put this necessary enforcement action in place.

Id. at 256.

The same type of letter was sent to two additional clients of the attorney. Id. In addition, another FDIC office refused the attorney's request to reschedule another meeting involving a different client. Id. at 257.

The attorney brought suit, contending that the FDIC's actions were in retaliation for her exercise of her First Amendment rights.

Id. However, the FDIC moved to dismiss the claim based on a lack of standing, and a failure to state a claim upon which relief could be granted. The District Court granted the Motion to Dismiss under Rule 12(b)(6), and the Court of Appeals affirmed. Id. In pertinent part, the Court stated:

> [The FDIC representative], like any official of the FDIC, clearly had the right to express his views about FDIC policy and about [the attorney's] position at the Des Moines meeting and in The Business Record. His exercise of his first amendment rights cannot be interpreted as retaliatory conduct.

Id. at 257.

More importantly, the Court went on to hold that the attorney did not have a cause of action for violation of her own right of access to the Court, as the actions were taken against her clients. As the Court explained:

> The cases cited by [the attorney] are inapposite, because in each case the government clearly acted to injure the plaintiff after the plaintiff exercised a constitutional right. * * * [The attorney's] clients, not [the attorney] were affected by the FDIC's refusal to negotiate at the prehearing meetings and by its refusal to reschedule a meeting. * * * [The attorney] has not even alleged that any of her clients have dismissed her or that she has been unable to acquire new clients.

Id. at 258.

The same is true here. If any property, or liberty interests were impaired by the Defendants' conduct, of which the Plaintiffs now complain, they were those of the State of Minnesota, whose rights,