UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER
and
REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * * *

Eric Ringsred, an individual and a state, federal and local taxpayer, State of Minnesota, by Eric Ringsred, and Deborah Ringsred,

Plaintiffs,

vs.

City of Duluth, a municipal corporation, and the following City Officials, individually and in their official capacities, Mayor Gary L. Doty; Cynthia Albright, Assistant City Attorney; Brian Brown, City Attorney; Robert Asleson, Assistant City Attorney; John Schweiger, Special Projects Manager; John Smedberg, Assistant City Attorney; Duluth Economic Development Authority, and its Director, Cynthia Albright, individually and in her official capacity; Team Duluth; Soft Center-Duluth, Inc.; Michael McNamara; Duluth Area Chamber of Commerce and David Ross, CEO,

Defendants. Civ. No. 00-2241(RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 22nd day of October, 2001.

117 118

FILED OCT 22 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A) and (B), upon the numerous Motions of the parties. As there are a number of different Defendants in the case, for the sake of clarity, we first categorize the Defendants into relevant groupings, and then proceed to delineate the Motions of the parties.

The first cluster of Defendants may be denominated as the "Government Defendants," which includes the City of Duluth and its City officials, in both their individual, and official capacities; namely, Gary Doty, Cynthia Albright, Bryan Brown, Robert Asleson, John Schweiger, and John Smedberg, together with the Duluth Economic Development Authority ("DEDA"). A second grouping may be designated as the "Soft Center Defendants," to include the Soft Center-Duluth, Inc., and Michael McNamara, as an employee of the Soft Center-Duluth. The last category is comprised of the "Chamber Defendants," which includes the Duluth Area Chamber of Commerce, Team Duluth, David Ross and, in a separate capacity, Michael McNamara. The Plaintiffs, and each grouping of Defendants, have filed Motions which we list as follows:

1. The Motion of the Government Defendants to Dismiss or, in the alternative, for Summary Judgment.

2. The Motion of the Plaintiffs[1] to Compel the Appearance of the Individual Government Defendants at a Deposition, and the Obverse Motion of the Individual Government Defendants for a Protective Order.[2]

---

[1]The Plaintiff Eric Ringsred ("Ringsred"), brings this action on his own behalf, both as an individual, and as a Federal, State, and local taxpayer, as well as on behalf of the State of Minnesota. Deborah Ringsred, who is the wife of Ringsred, has asserted a claim for the loss of quantity and quality of time with her husband, as well as injuries suffered as a result of damage to Ringsred's reputation. Deborah Ringsred has not expressly joined in advancing the Motions filed by Ringsred, as she has not signed any of the Motion papers, nor has she argued any Motion in open Court. Accordingly, we will address the Plaintiffs' position jointly, except when we consider one of their claims which affects either of them individually.

[2]On April 3, 2001, the Plaintiffs served deposition notices on the individual Government Defendants, which set the dates of their depositions for April 23 through 25, 2001. Thereafter, on or about April 22, 2001, the Government Defendants served their Motion to Dismiss or, in the alternative, for Summary Judgment, which was based, in part, on a claim of qualified immunity. They consequently advised the Plaintiffs that they would not appear for the noted depositions.

Instead of filing a timely responsive pleading to the Motion to Dismiss, the Plaintiffs filed a Motion to Compel the Government Defendants to appear for their depositions. In turn, the Government Defendants filed a Motion for a Protective Order, which sought protection from being deposed, and which urged that, since their dispositive Motion was predicated on a claim of qualified immunity, they should be shielded from suit for their discretionary governmental acts, unless their conduct should violate clearly established statutory or constitutional rights of which a reasonable person would have known. See, Wilson v. Layne, 526 U.S. 603, 609 (1999), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The defense of qualified immunity protects not only against liability, but also against litigation. See, Hunter v. Bryant, 502 U.S. 224, 227 (1991), citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Engle v. Townsley, 49 F.3d 1321, 1323 (8th Cir. 1995); Moore v. Web-

(continued...)

3. The Motion of the Plaintiffs to File an Untimely Memorandum in Opposition to the Governmental Defendants' Motion for Dismissal.[3]

4. The Motion of the Government Defendants for Leave to File an Untimely Reply Memorandum.[4]

---

[2](...continued)
ster, 932 F.2d 1229, 1232 (8th Cir. 1991). Thus, Courts have tailored Protective Orders to prevent unnecessary discovery into the merits of a plaintiff's claim, while still allowing discovery regarding the qualified immunity defense. See, Maxey v. Fulton, 890 F.2d 279, 282 (10th Cir. 1989); Felak v. United States, 661 F. Supp. 51, 53-54 (D. Minn. 1987); c.f. Haenchen v. Riley, 994 F.2d 842, 1993 WL 169051 at *1 (8th Cir. 1993)("However, we note that discovery is appropriate where 'the parties disagree as to what actions the law enforcement officers took and if the plaintiff can present some evidence to support [his] allegations.'")[unpublished decision]. Otherwise, such discovery on the merits of a claim would only erode the qualified immunity defense. See, Maxey v. Fulton, supra at 281.

As the Governments' Motion for a Protective Order was to prevent discovery pending the Court's decision on the Motion to Dismiss, it is now mooted by the Recommendation we make. Thus, we deny the Plaintiffs' Motion to compel depositions, as well as the Government Defendants' Motion for a Protective Order, as moot, but without prejudice to their renewal, if otherwise warranted, should our Recommendation be rejected by the District Court.

[3]The Plaintiffs were obligated to serve and file their responsive Memorandum to the dispositive Motion of the Government Defendants on May 17, 2001. However, due to an apparent misunderstanding on the Plaintiffs' part, they did not file their Memorandum until May 22, 2001, and they requested leave to file their untimely submission on that same day. In the interests of being fully informed, we previously granted the Plaintiffs' Motion to File their untimely Memorandum, and now formally record that ruling.

[4]Owing to the Plaintiffs' late filing of their Memorandum in Opposition to the Government Defendants' Motion to Dismiss, the
(continued...)

5. The Motion of the Plaintiffs to Amend the Scheduling Order of December 1, 2000, so as to Allow an Amendment of the Complaint, and their Motion to Amend Their Complaint.[5]

---

[4](...continued)
Government Defendants requested leave to file an untimely Reply Memorandum and, since the Government Defendants' Reply is untimely, through no fault of their own, we previously granted this Motion, and now formally record that ruling.

[5]This is the Plaintiffs' second attempt to amend their Complaint, and follows our earlier rejection of their first attempt as being both untimely, and futile -- a decision which was adopted by the District Court. As explained by the Plaintiffs, they believe that an amendment of their Complaint would disarm much of the dispositive Motion of the Government Defendants, which is premised, in part, on the shortcomings of the Plaintiffs' Complaint.

In our Scheduling Order of December 1, 2000, the deadline for amending the pleadings was set for February 1, 2001. Where, as here, the deadline for the amendment of pleadings has since expired, the propriety of a Motion for leave to amend "is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure." <u>Alholm v. American Steamship Co.</u>, 167 F.R.D. 75, 77 (D. Minn. 1996). Thus, the Plaintiffs must show the "good cause," which is required by Rule 16(b), if they are to be allowed to amend their Complaint on an untimely basis. <u>Rule 16(b), Federal Rules of Civil Procedure</u> ("A schedule shall not be modified except upon a showing of good cause * * *."). Once again, the Plaintiffs have failed to demonstrate good cause for their belated Motion to Amend.

While the Plaintiffs contend that the Motion of the Government Defendants to Dismiss was untimely, they are mistaken, as the applicable dispositive Motion deadline was September 15, 2001, and the Motion was heard well in advance of that date. Moreover, the bases for the Government Defendants' Motion were not waived, as the Plaintiffs argue, as those grounds for dismissal were asserted in their respective Answers to the Plaintiffs' Complaint. See, <u>Rule 12(b), Federal Rules of Civil Procedure</u> ("No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion."). More importantly, the
(continued...)

6. The Motion of the Soft Center Defendants for Summary Judgment.

7. The Motion of the Chamber Defendants for Summary Judgment.

8. The Motion of the Government Defendants for Rule 11 Sanctions.

9. The Informal Motion by the Defendants to Strike.[6]

---

[5](...continued) Plaintiffs had notice that the Government Defendants found their Complaint substantially lacking, as the issue was addressed at the Initial Pretrial Conference. The Plaintiffs' first attempt to amend their Complaint, while late and largely futile, was an attempt to cure the deficiencies which were then noted. Thus, if the Plaintiffs had asserted such a Motion to Amend in a timely fashion, they would have been afforded an opportunity to clarify their claims, and add others, so long as those claims were not legally futile. Accordingly, finding no good cause to allow the requested late amendment, we deny the Plaintiffs' Motion to Amend the Scheduling Order and, resultantly, their second Motion to Amend their Complaint.

[6]On July 19, 2001, this Court heard the Motion by the Chamber Defendants for Summary Judgment, as well as the Government Defendants' Motion for Rule 11 Sanctions. Thereafter, on July 31, 2001, and again on August 13, 2001, the Plaintiffs submitted additional materials for the Court's consideration. The materials address many of the issues raised in the three Hearings before this Court. As a consequence, the Defendants request that the additional materials be stricken from the Record. While we did invite the Plaintiffs to submit any additional authority, following the Hearing of July 19, 2001, we granted such leave with respect to the issues raised during that Hearing. Further, we did not invite the submission of new evidence, but only such case authority as they felt supported their arguments at that Hearing. Therefore, we have considered the relevant case authorities presented in the Plaintiffs' post-Hearing submissions, but we have not considered the substance of the newly presented factual materials and, to that extent, we grant the Defendants' informal Motion to Strike.

Hearings on the Motions were conducted on May 31, 2001, June 28, 2001, and July 19, 2001, at which the Plaintiffs appeared pro se; the Government Defendants appeared by M. Alison Lutterman, Assistant Duluth City Attorney; the Soft Center Defendants appeared by Faye M. Witt and James A. Wade, Esqs.; and the Chamber Defendants appeared by R. Thomas Torgerson, Esq.

As to the Motions which remain for disposition, we recommend that the Motion of the Government Defendants to Dismiss, for want of subject matter jurisdiction be granted; that the Motions for Summary Judgment of the Soft Center Defendants, and of the Chamber Defendants, be granted; and we deny the Motion of the Government Defendants for Rule 11 Sanctions.

## II. Factual and Procedural History

The Plaintiffs bring this action under Title 42 U.S.C. §1983, and allege that the Defendants have violated various Federal, State and local laws, and have infringed upon their Federal constitutional rights. The crux of their claims arise from certain actions which, allegedly, were taken by the Defendants during prior litigation involving both the Plaintiff Eric Ringsred ("Ringsred"), and a number of the Defendants here. Specifically, in May of 1998, Ringsred brought suit in Minnesota District Court, on behalf of the State of Minnesota, and against the City of Duluth, DEDA, Mayor Gary Doty, and others, under the Minnesota Environmental Rights

Act, Minnesota Statutes Section 116B.01 et seq. ("MERA"), and the Minnesota Environmental Policy Act, Minnesota Statutes Section 116D.01 et seq. ("MEPA"). According to Ringsred, the purpose of that earlier suit was to protect buildings, which were located in the "Duluth Commercial Historic District," from a demolition designed to make space for the erection of the "Soft Center/Technology Village" project.

Ringsred's suit, on behalf of the State, was premised upon the following Minnesota statutory provision:

> Any person residing within the state * * * may maintain a civil action in the District Court for declaratory or equitable relief in the name of the State of Minnesota against any person, for the protection of the air, water, land or other natural resources located within the state, whether publicly or privately owned, from pollution, impairment, or destruction; provided, however, that no action shall be allowable hereunder for acts taken by a person on land leased or owned by said person pursuant to a permit or license issued by the owner of the land to said person which do not and can not reasonably be expected to pollute, impair, or destroy any other air, water, land, or other natural resources located within the state.

Minnesota Statutes Section 116B.03, Subdivision 1.[7]

---

[7]Ringsred's State Court action was also predicated on the following statutory provision:

> Decisions on the need for an environmental assessment worksheet, the need for an environmental impact statement and the adequacy of an

(continued...)

In particular, Ringsred sought, on behalf of the State of Minnesota, to enjoin the "Soft Center/Technology Village" project, and to require the City to prepare an Environmental Impact Statement ("EIS"). The Trial Court issued two Temporary Restraining Orders, and then held a Trial on the merits during September and October of 1998. On October 5, 1998, the Trial Court issued an Order, which found the area in dispute -- the 0 to 100 block of East Superior Street, which was referred to as "Old Downtown" -- constituted a "natural resource"[8] under MERA.[9]

---

[7](...continued)

> environmental impact statement may be reviewed by a declaratory judgment action in the district court of the county wherein the proposed action, or any part thereof, would be undertaken.

Minnesota Statutes Section 116D.04, Subdivision 10.

[8]MERA defines "natural resource" as follows:

> Natural resources shall include, but not be limited to, all mineral, animal, botanical, air, water, land, timber, soil, quietude, recreational and historical resources.

Minnesota Statutes Section 116B.02, Subdivision 4.

[9]It appears that the actual portion of "Old Downtown," which the Trial Court deemed a "natural resource," is larger than the 0 to 100 block of East Superior Street, although the exact dimensions are not known to this Court. See, State of Minnesota, by Ringsred v. City of Duluth, C3-98-601186, Findings of Fact, Conclusions of Law and Order for Judgment, at 37 (Minn. Dist. Ct. October 5, 1998). However, as pertinent to this case, we are concerned primarily with the activities in the 0 to 100 block -- that is, the epicenter of the Soft Center/Technology Village Project -- as those (continued...)

Notwithstanding that ruling, however, the Trial Court also determined, after conducting the equivalent of an Environmental Assessment Worksheet ("EAW"), that the Soft Center/Technology Village project should proceed. The Court reasoned that the project would not have a significant impact on the denoted "natural resource" and, further, that any effect would further diminish over time. The Court also found that there was no feasible alternative site, in the City, for the project, and that the project would yield substantial economic and educational benefits to the City, and its citizens. Thus, the Trial Court allowed the project to advance, thereby allowing the demolition of five buildings, located on the future site of the project, but imposing a mandatory injunction which required the defendants, in that case, to confer the 0 to 100 block of East Superior Street with the environmental protections befitting a "natural resource."[10] Ringsred appealed the Trial

[9](...continued) activities were the core of Ringsred's State Court proceeding.

[10]In pertinent part, the Trial Court ordered:

> That portion of Duluth depicted upon the outlined portion of Exhibit 23, attached hereto as Attachment A, consisting of a historical resource and therefore being a "natural resource," defendants and each of them, are ordered and directed to accord such district so delineated and any structures located therein constructed between 1880 and 1930

(continued...)

Court's Order to the Minnesota Court of Appeals, which affirmed the Trial Court's decision in all respects. See, State of Minnesota, by Ringsred v. City of Duluth, 1999 WL 618613 (Minn. App. August 17, 1999)[publication page references not available]. No further appeal was taken.

By way of additional background, in September and October of 1998, prior to the Trial of the State Court action, Ringsred sought a Temporary Restraining Order so as to prevent the destruction of the Strand Theater, which was located within the area that was ultimately determined, by the Trial Court, to be a "natural resource," but it was not one of the five buildings which were scheduled for demolition at the site of the planned Soft Center/ Technology Village. See, Affidavit of Robert Asleson, at ¶1. Nonetheless, Ringsred sought a Temporary Restraining Order in order

---

[10](...continued)
those protections accorded to natural resources under Minnesota environmental laws including, without limitation, chapters 116B and 116D of the Minnesota statutes. Such protection shall be accorded as any and all activities are carried out by them or under their direction or control with regard to or as a part of the construction of the Soft Center project including: the Soft Center building, the related parking ramp, the related skywalk, utilities and any and all other construction or demolition activities related to the Soft Center project within or affecting the delineated district set fourth on attachment A hereto.

to protect the Strand Theater from destruction. As alleged by Ringsred, when the defendants in the State Court action learned about his Motion, they preemptively destroyed portions of the Strand Theater. Although the Temporary Restraining Order was later issued, it was subsequently lifted because, as related by Ringsred, the Court found that there had already been substantial damage to the building, and there was, as alleged by Ringsred, perjured testimony, from the City, that no buyers could be found for the property.

Ringsred further contends that, during the Trial of the State Court action, the defendants in that case conducted meetings with individuals who were listed as witnesses for Ringsred, and also conducted an advertising campaign to promote the Soft Center/Technology Village. Ringsred asserts that, in one instance, the State Court defendants attempted to prevent one witness, Jill Fisher ("Fisher"), from testifying at the Trial, and threatened another witness, Sheldon Aubut ("Aubut"), with physical injury and damage, because of his testimony. There is no allegation, however, let alone a showing, that either witness did not testify at the Trial, or that either one of them gave false testimony as a result of the purported threats.

In December of 1998, Ringsred returned to the State Court, and sought a Temporary Restraining Order to enforce, in effect, the

mandatory injunction that the Trial Court had issued as part of its Order of October 5, 1998. According to Ringsred, the defendants were set to demolish three buildings, which he believed fell within the confines of the mandatory injunction, but which the defendants had failed to treat as a "natural resource," as required by the State Court's mandatory injunction. Ringsred maintains that the Hearing on that Motion was to occur at 11:00 o'clock a.m., on December 28, 1998, but that the defendants preemptively demolished the three buildings at 10:00 o'clock a.m., without a building demolition permit, without soliciting competitive bids, and without governmental approval of the expenditure. Notwithstanding Ringsred's assertions, the State Court denied the Temporary Restraining Order, as being without a sufficient showing for the equitable relief that Ringsred was requesting. See, State of Minnesota, by Ringsred v. City of Duluth, C3-98-601186, Order, at 3 (Minn. Dist. Ct. December 28, 1998).[11] Indeed, in its decision of August of 1999, the Minnesota Court of Appeals expressly observed that "the trial court ha[d] issued a mandatory injunction as to the remainder of the [Soft Center] project and Ringsred has made no showing that

[11]The Orders of the State Courts which dealt with Ringsred's earlier claims, and certain of the Motion papers, and papers on Appeal, are attached to several Affidavits in this Record. Accordingly, we reference the document we cite, but do not specify one Affidavit, or another, as the repository of the document.

respondents have violated the law or the trial court's mandate," and that "Ringsred has shown no environmental violation as to the work in process." State of Minnesota, by Ringsred v. City of Duluth, 1999 WL 618813 (Minn. App. August 17, 1999)[publication page references not available].

In December of 1999, Ringsred filed, in State Court, a Motion for an Order to Show Cause, and an Application for Sanctions, against the defendants, there, contending that they had violated various Minnesota Statutes, including the giving of false testimony concerning Federal funding for the Soft Center project, and regarding potential buyers and users for the Strand Theater; the preemptive demolition of the Strand Theater; the conduct of prejudicial pretrial meetings with Ringsred's witnesses; the dissemination of prejudicial pretrial publicity; the threatening of Ringsred's witnesses; the interference with the service of a subpoena on one of Ringsred's witnesses; the disobedience of the Court's mandatory injunction; the misrepresentation of facts during the Hearing on Ringsred's Motion for a Temporary Restraining Order; the demolition of a building without a building permit; the demolition of a building without authorization by the DEDA; the demolition of a building without taking competitive bids; and the attempt to "cover up" the failure to take competitive bids. See, State of Minnesota, by Ringsred v. City of Duluth, C3-98-601186, Affidavit of Eric

Ringsred No. 3 to Motion for Order to Show Cause and Apply Sanctions.

The State Trial Court denied Ringsred's request to sanction the defendants, or to have them show cause why they should not be held in contempt of that Court, because most of his allegations were based on hearsay, and because, in the Court's view, a Motion for an Order to Show Cause, and for Sanctions, was an inappropriate means of raising such issues, as discovery would need to proceed if the claims were cognizable. The Court specifically noted that "[m]any of the issues which plaintiff raises could well be the subject of separate proceedings subject to the rights and responsibilities of the parties under our Rules of Procedure including those applicable to discovery." See, State of Minnesota, by Ringsred v. City of Duluth, Civ. No. C3-98-601186, Order Regarding Motion for Order to Show Cause and Contempt, at 7 (Minn. Dist. Ct. January 10, 2000). No appeal from the State Court's denial of Ringsred's Motion for Sanctions, and for Contempt of Court, was taken.

The Plaintiffs have also alleged that, in January of 2000, the Defendants publicly accused Ringsred of "frivolous litigation." As phrased by the Plaintiffs, "[f]irst the local news media, then Ringsred himself, were notified of a threat by Defendants against

him for Court sanctions to limit his ability to litigate issues of personal and public concern." Complaint, at ¶7.

Thereafter, on October 3, 2000, the Plaintiffs commenced this action, against the Government Defendants, the Soft Center Defendants, and the Chamber Defendants, contending that they had violated Ringsred's right of access to the Court, as guaranteed by the First Amendment, as well as the Due Process, and Equal Protection Clauses, of the United States Constitution. The Plaintiffs have further alleged, without specificity, that the Defendants have violated various Federal, State, and local laws, and have engaged in unlawful recruitment of local businesses for the Soft Center facility. In addition, the Plaintiffs assert that the Defendants actions have damaged the reputation of Ringsred, by stating, to the public, that Ringsred was conducting "frivolous litigation," and by threatening sanctions as a consequence of such frivolousness. Lastly, the Plaintiffs maintain that the conduct of the Defendants has caused injury to the family of Ringsred, such as emotional distress, loss of time, money, and effort. As a result, the Plaintiffs ask for the following damages:

> 1. Compensatory damages to Ringsred in excess of $50,000;
>
> 2. Damages for lost time, lost enjoyment of life and property, and emotional distress, both past and future;

> 3. Exemplary damages upon the Plaintiffs' Motion;
>
> 4. Damages to the people of the State of Minnesota by Ringsred, to be held in trust for the purpose of mitigation to the "Duluth Commercial Historic District," in the amount of $10 million; and
>
> 5. Exemplary damages to the people of the State of Minnesota by Ringsred, upon the Plaintiffs' Motion;
>
> 6. Damages to Deborah Ringsred for loss of reputation, and of quality and quantity of time given to her by Ringsred in the amount of $10,000;
>
> 7. A declaration that the Defendants' are not in compliance with the "Mandatory Injunction" issued by the State Court on October 5, 1998, and commanding future compliance;
>
> 8. An Order commanding detailed compliance with the State Court Order mandating conformance with MEPA and MERA in respect to proposed skywalk construction within the Duluth Commercial Historic District;
>
> 9. Exemplary damages to Federal, State, and local taxpayers, upon the Plaintiffs' Motion;
>
> 10. An award of costs, disbursements, reasonable attorney's fee or their equivalent, and such other relief as the Court deems just and equitable.

Complaint, at ¶¶35-40.

In response to the Plaintiffs' Complaint, the Government Defendants have moved to dismiss the Complaint, or for a grant of Summary Judgment, on a number of different bases, including a claimed lack of subject matter jurisdiction, a failure to state a claim upon

which relief can be granted, and on the basis of qualified and absolute immunity.

The Soft Center Defendants, and the Chamber Defendants, seek Summary Judgment, as the Soft Center Defendants contend that the Plaintiffs have not identified any complaints that they have against them and, together with the Chamber Defendants, contend that they were not acting "under color of state law" and, therefore, cannot be held liable under Section 1983. In addition, the Government Defendants seek Rule 11 Sanctions against Ringsred, arising out of his attempt to file of a second Motion to Amend the Complaint.

Notably, the Plaintiffs allege no occasion when they were unable to present claims, or evidence in support of any claim, to the State Court, or where they have declined to advance a claim, make an argument, or otherwise petition a Court for relief, on account of some fear of retaliation at the hands of the Defendants. Rather, the Plaintiffs suggest, by mere inference, that the result reached by the State Court would have been different had the Defendants not engaged in the acts of which they are accused. Insofar as we are aware, and our research has been extensive, this is a case of first impression.

Some learn from history, others are content to relive it. In this instance, any regression, so as to relitigate the past, is

foreclosed by controlling Federal precedent. After a painstaking review of the Record presented, we can applaud the Plaintiffs for the novelty of their claims, but we conclude that none of their causes of action can survive the Defendants' dispositive Motions and, therefore, we recommend that those Motions by granted. Further, we deny the Government Defendants' Motion for Rule 11 Sanctions as being without merit.

## III. Discussion

### A. The Government Defendants' Motion to Dismiss, and/or for Summary Judgment.

The Plaintiffs' Complaint spans six pages, and contains five recognizable causes of action. Nonetheless, within those six pages, the Plaintiffs have seemingly included every unfairness that they claim to have experienced, during the course of the State litigation, because of the acts of generic defendants, as well as numerous grievances that other, nonparties, have purportedly endured. By and large, the Complaint does not differentiate between the Defendants, or specifically identify which of the Defendants purportedly committed which misdeed.[12] Moreover, many of their

[12]In fact, in only one instance do the Plaintiffs specifically mention a Defendant by name; specifically, the allegation that "Mayor Gary Doty has participated and encouraged violations of law and the U.S. Constitution, and abdicated his responsibility over subordinates to uphold the law and U.S. Constitution." Complaint, at ¶10.

allegations are so vague and sweeping, that they afford the Defendants with little notice, or forewarning, of the specific misconduct of which they are accused. For example, in their Second Cause of Action, the Plaintiffs state:

> Defendants individually and in combined agreement with each other by their actions above-noted, have negligently and intentionally violated civil and penal statutes including, but not limited to, professional conduct of attorneys, misconduct of public officials, coercion, witness tampering, competitive bidding for public projects, obstruction of justice, contempt of Court, abuse of legal process, and deceit-collusion-misconduct by attorneys, perjury, conspiracy to commit crimes, and failure to report misuse of public funds.

Complaint, at ¶13.

As the Plaintiffs have not cited any statutory, or other legal bases for such a claim, it largely falls of its own weight.

Section 1983 disputes, which frequently are spawned in rage or insult, lend themselves to such imprecision and vagueness. As the Court observed, in Liggins v. Morris, 749 F. Supp. 967, 971 (D. Minn. 1990):

> Constitutional claims brought under Title 42 U.S.C. §1983 are discrete claims and as such should not be pled in this shotgun manner. Almost invariably, complaints using this format are met with motions to dismiss or summary judgment under Federal Rules of Civil Procedure 12(b)(6) and 56. It is then left to the court to divine what discrete constitutional violations are in fact legitimate and proper as to each plaintiff and as against each defendant. The court must and does ferret out

> and dismiss those alleged constitutional violations that patently cannot be maintained. This process is time consuming, fraught with frustrations for both the court and counsel, and disrupts the orderly processing of legitimate claims. Although Rule 8 provides for notice pleading, it demands greater specificity than that found in this complaint or in others pled in the same manner.

Id.

The Court, in Liggins, went on to hold that "[t]he time has come for practitioners in this district to prepare complaints alleging violations of 42 U.S.C. §1983 in a fashion that will identify the specific claims of individual plaintiffs for specific constitutional violations as against only culpable defendants," and that the failure to do so will result in dismissal "for failure to comply with Rule 8 and Rule 11 of the Federal Rules of Civil Procedure." Id.

Plainly, the Plaintiffs' Complaint contravenes the holding in Liggins, but we decline to apply the proscriptions of Liggins where, as here, the Plaintiffs are not represented by legal counsel,[13] thereby obligating us to ferret out any cognizable causes of

---

[13]We note, however, that, while not a licensed attorney, Ringsred is an experienced pro se Plaintiff -- a circumstance that has not eluded the State District Court which considered his previous claims, nor our prior ruling on the Plaintiffs' first Motion to Amend their Complaint. See, e.g., State of Minnesota, by Ringsred v. City of Duluth, Civ. No. C3-98-601186, Findings of Fact, Conclusions of Law and Order for Judgment, at 39 (Minn. Dist. Ct. October 5, 1998) ("At the outset the Court wishes to commend coun-
(continued...)

action, and to address the merits of any such claims. Accordingly, following a recitation of the standard that governs our review, we turn to an analysis of the claims that the Plaintiffs have raised.

1. Standard of Review. The Government Defendants advance their Motion to Dismiss, in part, on Rule 12(b)(1) and (b)(6), Federal Rules of Civil Procedure. To succeed in a Motion to Dismiss for want of subject matter jurisdiction under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either on its face, or on the factual truthfulness of its averments. See, Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge to jurisdiction, "we accept all of the factual allegations in the Complaint as true and ask whether, under those circumstances, [Federal subject matter jurisdiction exists]."

---

[13](...continued)
sel and plaintiff who has proceeded herein pro se. Mr. Ringsred, although not an attorney by training or profession, conducted himself in a manner and with a degree of professionalism and candor that any attorney would do well to emulate."); Order and Report and Recommendation of March 14, 2001, at p. 14, n. 3 ("We note that Ringsred is an educated and articulate litigant, and is no stranger to legal proceedings, both when represented by legal counsel, and when proceeding pro se. See also, Ringsred v. City of Duluth, 828 F.2d 1305 (8th Cir. 1987); Ringsred v. Dole, 828 F.2d 1300 (8th Cir. 1987); Duluth Steam Cooperative Ass'n v. Ringsred, 519 N.W.2d 215 (Minn.App. 1994); State of Minnesota, by Eric Ringsred v. City of Duluth, 1999 WL 618613 (Minn.App., August 17, 1999)."). Notwithstanding our rejection of his causes of action, as being outside of our subject matter jurisdiction, we continue in the view that Ringsred has demonstrated a keen ability to research his claims, and to effectively argue their substance.

Deuser v. Vecera, 139 F.3d 1190, 1191 (8th Cir. 1998), quoting Berkovitz v. United States, 486 U.S. 531, 540 (1988). A District Court also has the authority, in a Rule 12(b)(1) challenge to subject matter jurisdiction, to consider matters outside of the pleadings. Id. at 1191 n.3, quoting Drevlow v. Lutheran Church, Mo. Synod, 991 F.2d 468, 470 (8th Cir. 1993); Maruska v. United States, 77 F. Supp.2d 1035, 1037 n. 2 (D. Minn. 1999).

In considering a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, we accept as true, in a hypothetical sense, all of the factual allegations of the Complaint, and we view those allegations in a light most favorable to the nonmoving party -- here the Plaintiff. See, Anderson v. Franklin County, Mo., 192 F.3d 1125, 1131 (8th Cir. 1999); Riley v. St. Louis County of Missouri, 153 F.3d 627, 630 (8th Cir. 1998); Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998). Where, as here, the parties have presented the Court with matters outside of the pleadings, which the Court has not excluded, the Motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b), Federal Rules of Civil Procedure. Here, the distinction may well be without a difference, for the "matters outside the pleading," which we have considered, are the

materials generated in, by, or for, the Minnesota Courts which previously ruled upon Ringsred earlier State law claims and, therefore, as converted, the Government Defendants' Motion, under Rule 12(b)(6), essentially replicates their Motion under Rule 12(b)(1).[14]

2. Legal Analysis.

a. The Plaintiffs' First Cause of Action.

In their First Cause of Action, which is only being asserted as an action on behalf of Ringsred, the Plaintiffs contend that the Defendants have denied Ringsred a fair Trial, and access to the Courts, as well as his right to procedural due pro-

---

[14]We note that the Plaintiffs interpreted the Government Defendants' Rule 12(b)(6) Motion as being one for Summary Judgment, so they can legitimately claim no surprise, see Memorandum in Opposition to Government Defendants' Motion to Dismiss, at p. 2, and the Plaintiffs never moved the Court, pursuant to Rule 56(f), Federal Rules of Civil Procedure, for a deferral of any ruling, nor did they offer any competent showing for such a deferral. More importantly, the matters we have relied upon, namely the pleadings before, and the rulings of, the Minnesota Courts which resolved Ringsred's earlier State action, are materials of which the Court could properly take judicial notice. See, Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988), quoting MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986)("In addition to the complaint, it is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss."); see also, Piaubert v. Sefrioui, 208 F.3d 221 n.7, 2000 WL 194149 at *2 (9th Cir. 2000)[unpublished opinion]; City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3rd Cir. 1998). In any event, the recommendation we make is more properly expressed as a dismissal, for want of subject matter jurisdiction under Rule 12(b)(1) and, as to that issue, the Plaintiffs have had a full opportunity to argue their position, and to present such matters, outside the pleading, as they wanted the Court to consider.

cess, because of the Defendants' conduct during the Soft Center/ Technology Village litigation. Since these are separate stanzas to a common theme, we address them together.

As to the procedural due process claim, the Plaintiffs contend that, through the preemptive demolition of the Strand Theater, and of the three additional buildings in December of 1998, the Defendants deprived Ringsred of his property rights accorded by Minnesota Statutes Section 116B.01;[15] his rights afforded by the State Court's "mandatory injunction," which was issued in October of 1998; his real estate interest in the "natural resource," which was identified by the State Court; and his "cause of action" conferred by Minnesota Statutes Section 116B.03 -- or MERA.

In determining whether a plaintiff has properly asserted a claimed violation of due process, the first inquiry is into whether

[15]Minnesota Statutes Section 116B.01 provides, in pertinent part, as follows:

> The legislature finds and declares that each person is entitled by right to the protection, preservation, and enhancement of air, water, land, and other natural resources located within the state and that each person has the responsibility to contribute to the protection, preservation, and enhancement thereof. * * * Accordingly, it is in the public interest to provide an adequate civil remedy to protect air, water, land and other natural resources located within the state from pollution, impairment, or destruction.

there exists a liberty or property interest which the defendants have denied to that plaintiff. See, Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). Once we determine that a liberty or property interest has been implicated -- that is, one of constitutional dimension -- then we must determine what process was due before the Government could deprive the plaintiff of that interest. See, Cleveland Bd. of Edu. v. Loudermill, 470 U.S. 532, 541 (1985). In this case, Ringsred's claim does not survive the first prong of the analysis, as we find no property, or liberty interest, which, under the circumstances presented, was personally held by Ringsred.

In supporting this aspect of their claim, the Plaintiffs rely upon the rights that were afforded to Ringsred by MERA, and the injunctions that were issued by the District Court, which were predicated on the provisions of MERA. As the caption of the State Court case accurately reflects, the claims that Ringsred was there prosecuting were the claims of the State of Minnesota. Ringsred made no showing of any personal property interest that he was vindicating, nor does he make such a showing here. All the relief ultimately granted, or denied by the State Court, as to the substance of the claims that Ringsred was there advancing, was for, or against, the State of Minnesota. See, Minnesota Statutes Section 116B.03, Subdivision 1 ("Any person residing within the state * *

* may maintain a civil action for **declaratory or equitable relief in the name of the State of Minnesota** * * *.").

Although Ringsred claimed incidental costs, and expenses, he made no claim for personal damages, as that form of monetary relief was not available to him under the statutory law of Minnesota upon which he relied, and his claim for costs, and attorneys' fees, was denied to him. Indeed, the Trial Court ruled, and the ruling was affirmed on appeal, that Ringsred's security deposit, arising from his success in obtaining temporary injunctive relief, would not be repaid to him in full, but would be disbursed, in part, to a developer of the project so enjoined; a developer who is not here a party. In effect, any property, or liberty interest held by Ringsred, in prosecuting that case, was of a type shared by every citizen of the State of Minnesota, in whose stead he litigated the case. As a consequence, if any property or liberty interest was impaired, it was the interest of the State of Minnesota, which does not here join in the Plaintiffs' Section 1983 claim.[16]

---

[16]We are mindful that Ringsred has captioned this proceeding as one in which he purports to represent the State of Minnesota. He does not identify the jurisdictional basis for him to do so, nor even the statutory basis for advancing those interests, and we are aware of none. This is not a putative class action, nor has there been any showing that Ringsred has standing to pursue monetary damage claims on behalf of a party whom Ringsred is not empowered to represent, since he is unlicensed to practice law. Nor can it sensibly be claimed that, here, the Plaintiffs are acting as pri-

(continued...)

The Plaintiffs' claimed denial of access to the Courts can fare no better, as the interests that Ringsred was pursuing in the State Courts were representational interests, and not those he had a right to litigate in his own stead. In this respect, we find our analysis closely guided, if not controlled, by the Court's holding in Curtin v. Federal Deposit Insurance Corporation ("FDIC"), 866 F.2d 255 (8th Cir. 1989). There, an attorney in private practice, who regularly represented banks in FDIC actions, challenged the enforceability of certain FDIC practices, in a public debate with

[16](...continued)
vate attorney generals, see Minnesota Statutes Section 8.31, Subdivisions 1 and 3, at least insofar as their Section 1983 claim is concerned. Lastly, even if the Plaintiffs could surmount these forboding hurdles to Ringsred's current claims on behalf of the State of Minnesota, it is plain that a State is not entitled to protection under either the Fourteenth Amendment, or Section 1983. See, Commonwealth of Pennsylvania v. Porter, 659 F.2d 306, 314 (3rd Cir. 1981)("The fourteenth amendment is a limitation upon the states in the interests of individuals, and section 1983 was enacted to facilitate vindication of such individual interests" and, therefore, "[t]he question is not whether either the fourteenth amendment or section 1983 protects the commonwealth neither does * * *."), cert. denied, 458 U.S. 1121 (1982); Barbara Z. v. Obradovich, 937 F. Supp. 710, 723 (N.D. Ill. 1996); 'Z' Buda v. Saxbe, 406 F. Supp. 399, 402 (E.D. Tenn. 1975)("The state is not a '* * * citizen of the United States or other person within the jurisdiction thereof * * *' within the contemplation of 42 U.S.C. §1983 * * *."); cf., Delta Special School Dist. v. State Board of Education, 745 F.2d 532, 533 (8th Cir. 1984)("A political subdivision of the state cannot invoke the protection of the fourteenth amendment against the state."); but cf., Santiago Collazo v. Franqui Acosta, 721 F. Supp. 385, 392 (D. P.R. 1989). Accordingly, even if authorized to do so, Ringsred would have no Section 1983 claim to prosecute on behalf of the Minnesota.

an FDIC representative, who defended those policies. Id. at 256. Thereafter, portions of the speakers' respective comments were reported in a local newspaper. Id. The FDIC representative objected to the accuracy of the newspaper article, and transmitted a letter to the newspaper's editor, in which he referred to "distortions and inaccuracies" in the article. Id. The FDIC representative then contacted one of the attorney's clients, and cancelled a previously scheduled meeting concerning the policy at issue. Id.

In speaking with the attorney's client, the FDIC representative informed the client that he knew about the attorney's views on the challenged policy, and then went on to state:

> This office feels that it would be nonproductive to attempt to negotiate a stipulation and consent to the issuance of the proposed Order under these circumstances. Accordingly, we are hereby cancelling the previously arranged meetings and intend to go forth with the preparation of a Notice of Charges and hearing to put this necessary enforcement action in place.

Id. at 256.

The same type of letter was sent to two additional clients of the attorney. Id. In addition, another FDIC office refused the attorney's request to reschedule another meeting involving a different client. Id. at 257.

The attorney brought suit, contending that the FDIC's actions were in retaliation for her exercise of her First Amendment rights.

Id. However, the FDIC moved to dismiss the claim based on a lack of standing, and a failure to state a claim upon which relief could be granted. The District Court granted the Motion to Dismiss under Rule 12(b)(6), and the Court of Appeals affirmed. Id. In pertinent part, the Court stated:

> [The FDIC representative], like any official of the FDIC, clearly had the right to express his views about FDIC policy and about [the attorney's] position at the Des Moines meeting and in The Business Record. His exercise of his first amendment rights cannot be interpreted as retaliatory conduct.

Id. at 257.

More importantly, the Court went on to hold that the attorney did not have a cause of action for violation of her own right of access to the Court, as the actions were taken against her clients. As the Court explained:

> The cases cited by [the attorney] are inapposite, because in each case the government clearly acted to injure the plaintiff after the plaintiff exercised a constitutional right. * * * [The attorney's] clients, not [the attorney] were affected by the FDIC's refusal to negotiate at the prehearing meetings and by its refusal to reschedule a meeting. * * * [The attorney] has not even alleged that any of her clients have dismissed her or that she has been unable to acquire new clients.

Id. at 258.

The same is true here. If any property, or liberty interests were impaired by the Defendants' conduct, of which the Plaintiffs now complain, they were those of the State of Minnesota, whose rights,

and interests, Ringsred voluntarily elected to pursue on a representational basis. We can see no meaningful distinction between Ringsred's role in the State Court action, and the private attorney's role in Curtin. Nevertheless, even if we concluded that Ringsred's right of access to the Court were individually held by him, and was not merely representational, his Section 1983 claim, on that basis would fail, but on different grounds.

Indisputably, there is a constitutional right of access to the Courts. In this Circuit, that right of access is viewed as a component of the First Amendment right to petition the government for redress of grievances. See, Harrison v. Springdale Water & Sewer Commission, 780 F.2d 1422, 1426 (8th Cri. 1986); see also, Valot v. Southeast Local Sch. Dist. Bd. of Edu., 107 F.3d 1220, 1226 (6th Cir. 1997)("In our judgment, Plaintiffs' claim is best viewed as a claim under the Petition Clause, for that provision expressly protects conduct most like the conduct for which Plaintiffs seek protection from retaliation."). As our Court of Appeals has explained:

> An individual's constitutional right of access to the courts "cannot be impaired, either directly * * * or indirectly, by threatening or harassing an [individual] in retaliation for filing lawsuits. It is not necessary that the [individual] succumb entirely or even partially to the threat as long as the threat or retaliatory act was intended to limit the [individual's] right of access." Sanders [v. St.

> Louis County], 724 F.2d [665, 666 (8th Cir. 1983)]. The cases from this Circuit, as well as from others, make clear that state officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future. See, e.g., id.; Garland [v. Polley], 594 F.2d [1220, 1223 (8th Cir. 1979)]; Hall v. Sutton, 755 F.2d 786, 787 (11th Cir. 1985); Matzker v. Herr, 748 F.2d 1142, 1150-51 (7th Cir. 1984)("An act taken in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for a different reason, would have been proper."); Lamar v. Steel, 693 F.2d 559, 562 (5th Cir. 1982), cert. denied, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983); Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir. 1981); Silver v. Cormier, 529 F.2d 161, 163 (10th Cir. 1976). An individual is entitled to "free and unhampered access to the courts." United States ex rel. Cleggett v. Pate, 229 F. Supp. 818, 821-22 (N.D. Ill. 1964).

Harrison v. Springdale Water & Sewer Commission, supra at 1427-28. By way of an example, in Harrison, the Court determined that the plaintiffs' Complaint stated a cognizable cause of action, based on a denial of access to the Courts, where the Complaint alleged that, in a suit by the plaintiffs against State actors, the State actors admitted to prosecuting a factually unsupported counterclaim against the plaintiffs solely as a tactical means to pressure them into settling their case. Id. at 1428. Other cases have held that actions, such as deliberate delay, may constitute a deprivation of the right of access to the Court. See, Whisman v. Rinehart, 119

F.3d 1303, 1311 (8th Cir. 1997); Ryland v. Shapiro, 708 F.2d 967, 974 (5th Cir. 1983).

Here, Ringsred claims that his right of access to the Court was impaired through the preemptive demolition of the Strand Theater; the preemptive demolition of the three buildings in December of 1998, which was asserted to be in contravention of a mandatory injunction issued by the State Court; the meetings with, and intimidation of, the witnesses who were to appear, and did appear, on behalf of Ringsred at the Trial; the "substantial advertising" to promote the "Soft Center" project; and the allegation, in January of 2000, that Ringsred was conducting "frivolous litigation," with attendant threats of seeking sanctions therefore. These contentions are readily distinguishable from those presented in Harrison, a case on which the Plaintiffs heavily rely. Here, we are presented with no admission, by any Defendant, that any act in defending against the claims Ringsred was raising in State Court was retaliatory, or was undertaken for any other unlawful or dilatory purpose.

Instead of the soberingly culpable admission at play in Harrison, here Ringsred raises a series of objections which, with regularity, litter civil litigation. Founded on our judicial system's reverence for advocacy, litigants routinely consider the efforts of an opponent to serve improper, ulterior ends. Efforts at discov-

ery, at Motion practice, and in all other aspects of the pretrial process, can be viewed, in the fiercely partisan eyes of the advocate, as an attempt to discourage continued litigation, or to force a settlement. In our experience, such claims, without more, have never proceeded beyond the filing of a Motion for Sanctions under Rules 11, or 37, Federal Rules of Civil Procedure. If now, as urged by the Plaintiffs, such complaints, without more, are viable grounds for successive Section 1983 claims, the prospect that the Courts will do little more than monitor sequential suits, between the same litigants, is unnerving.

We do not distinguish Harrison solely on that ground, however, for we recognize that the Ringsred raises more substantive claims which accuse the Defendants of acts which overshadow his objection to what he regards as the Defendants' vexing State Trial conduct. In no small part, the Plaintiffs predicate Ringsred's denial of access claim upon the "preemptive" demolition of the Strand Theater and three other buildings. The preemptive nature of the demolitions, the Plaintiffs urge, denied them an effective legal forum in which to preserve the status quo, for the acts of demolition were already in progress.[17] Notably, however, the State District Court

[17]We reiterate that, in his representative capacity, Ringsred's claimed constitutional deprivations were the same as every other citizen of the State of Minnesota. Having sued to enforce Minne-
(continued...)

heard these contentions, and was unmoved to order the equitable relief that Ringsred then sought. We have no basis to conclude, as the Plaintiffs imply, that the State Court was powerless to act if, in fact, the Court determined that its integrity was being impugned either by the partial razing of the Strand Theater in August of 1998, or by the subsequent destruction of three buildings in December of that same year. The State Court had a full panoply of equitable means to forestall, indefinitely, any further demolition, and to require a faithful, though probably less than perfect restoration, if that Court had been persuaded that such measures were warranted.

Unlike the circumstances in Harrison, and the other decisions that have been drawn to our attention, here the Plaintiffs do not simply wish to enforce the determinations of the underlying State Court Judgment; rather, they seek to relitigate, in effect, the very State Court processes which, ultimately, denied Ringsred the whole relief that he sought, both at Trial, and on appeal. In

---

[17](...continued) sota's interest, without reference to any individual interest in his own right, and without any legal right, under the statutory law upon which he relied, Ringsred's subsequent Section 1983 claim could be replicated by every citizen of this State who should wish to vindicate the same rights as Ringsred, thereby exposing, if the Plaintiffs are correct, the City to a staggeringly monumental damages claim for acts which, ultimately, were determined not to be unlawful.

Harrison, the offending Counterclaim of the State actors was dismissed as without merit in the underlying State Court action. Accordingly, in allowing the plaintiffs, there, to proceed with a Section 1983 claim in Federal Court, predicated upon the State actors' admission that the Counterclaim was a strategic ploy to pressure a settlement, no collateral attack on the State Court processes was presented to the Federal Courts. Here, however, the Plaintiffs attack the State Court processes as having produced the wrong result, or at least as having been misdirected by the Defendants improper pre-Trial, Trial, and post-Trial conduct. As a consequence, the Court, in Harrison, was not obligated to undertake the analysis to which we now turn.

The Rooker-Feldman doctrine presents a subject matter jurisdictional bar to general constitutional challenges brought in Federal Court, when the constitutional challenges are essentially appeals from a State Court Judgment, or are inextricably intertwined with claims prosecuted in State Court. See, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); Lemonds v. St. Louis County, 222 F.3d 488, 492-93 (8th Cir. 2000)("The Rooker-Feldman doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions."), cert. denied sub nom., Halbman v. St.

Louis County, --- U.S. ---, 121 S.Ct. 1168 (2001); Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995). In other words, when a case seeks a review of a State Court Judgment, or is inextricably intertwined with the State Court Judgment, the Federal Courts, with the exception of the United States Supreme Court, lack subject matter jurisdiction to decide the matter. See, Lemonds v. St. Louis County, supra.

As our Court of Appeals explained in Lemonds, "[a] general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" Id. at 493. "Where a litigant attempts to circumvent the requirement of seeking direct review in the United States Supreme Court by casting [his] lawsuit as a section 1983 action, Feldman's jurisdiction bar applies." Keene Corp. v. Case, 908 F.2d 293, 297 (8th Cir. 1990), citing Worldwide Church of God v. McNair, 805 F.2d 888, 893 n.4 (9th Cir. 1986), Curry v. Baker, 802 F.2d 1302, 1310 n.5 (11th Cir. 1986), and Hale v. Harney, 786 F.2d 688, 690-91 (5th Cir. 1986). The State and Federal claims need not be identical, however, for the doctrine to apply. See, Lemonds v. St. Louis County, supra at 493, citing In re Goetzman, 91 F.3d 1173, 1177 (8th Cir 1996).

Here, in practical effect, Ringsred is requesting that we overturn the State Court's decision which lifted the Temporary Re-

straining Order that had been previously imposed with respect to the Strand Theater, as well as the Court's finding that the State Court defendants had not violated that Court's mandatory injunction of October 5, 1998, in razing the three buildings in the following December of that year. In particular, the State Court determined, when Ringsred attempted to secure a Temporary Restraining Order to prevent the demolition of the three additional buildings, that he had not presented any evidence that a Temporary Restraining Order was necessary, as Ringsred had not shown that the destruction of the buildings fell within the ambit of that Court's Order. See, State of Minnesota, by Ringsred v. City of Duluth, C3-98-601186, Order, at 3 (Minn. Dist. Ct. December 28, 1998). Accordingly, the State District Court denied Ringsred's request for equitable relief, and the Minnesota Court of Appeals specifically noted, in its related ruling, that "Ringsred has made no showing that respondents have violated the law or the trial court's mandate." State of Minnesota, by Ringsred v. City of Duluth, 1999 WL 618613 (Minn. App. August 17, 1999)[publication page references not available].

In effect, in the State Court litigation, Ringsred won a battle, but lost the war -- he secured the historical designation he sought, but was unsuccessful in pressing his contention that the Defendants, or at least certain of them, should not be allowed to

raze buildings within that designated area, without the environmental preconditions he felt appropriate. The State Court's Judgment, which rejected Ringsred claims, would be a fragile resolution of the hotly disputed contentions there raised if, notwithstanding its entry, as well as its affirmance on appeal, its practical effect could be eviscerated by raising the same claims, as were presented to the State Court -- or as they could have been presented -- so as to be relitigated, in its repackaging, as a Section 1983 action. As the Court reiterated, in Lemonds, "federal plaintiffs cannot by artful pleading obtain a hearing of disguised state court appeals that would otherwise be subject to a Rooker-Feldman bar." Lemonds v. St. Louis County, supra at 494.

The entertwining of Ringsred's current claims, and those he advanced in the State Court proceeding, cannot be seriously contested. If, as Ringsred continues to allege, the Defendants have violated the terms of a State Court Judgment, we can see no reason to allow Ringsred to ignore that Judgment, with impunity, and proceed with the same claims in a Section 1983 vehicle in Federal Court, in order that he may seek monetary damages, in substantial sums, which were unavailable to Ringsred in the State Court, for conduct that the State Courts found to be complaint with the State Court's Injunction, and with the governing law. While Ringsred may well be disappointed in the rulings of the Minnesota Courts, we do

not sit as a Court of Appeals on State Court matters. Ringsred had full access to the State Court, and he exhausted his avenues for relief, from the State Court's Judgment, to the extent that he then felt was warranted. To allow litigants to engage in a successive Section 1983 claim, based on no more than their disagreement with an underlying State Court ruling, would effectively disembowel the Rooker-Feldman doctrine.

As further proof of the inextricably entwining of the Plaintiffs' current Federal claims, with those resolved by the State Court, we need only note that each of the protests as to the Government Defendants' conduct with Fisher; with Aubut; with the preemptive razing of the Strand Theater, and of other buildings in December of 1998; with the dissemination of prejudicial pretrial publicity; with misrepresentations of fact; with violations of the Minnesota's bidding and contract laws; and with unprofessional conduct by the City's attorneys, and governmental agents; were expressly proffered to the State District Court, in December of 1999, in conjunction with Ringsred's request that the Court find the Government Defendants in Contempt of Court so as to be appropriately sanctioned. The State District Court rejected Ringsred's contentions, and denied the Motion to Show Cause why the Government Defendants should not be cited for contempt, or otherwise sanctioned.

We understand Ringsred to characterize the State Court's decision as, in effect, a deferral of any ruling. We disagree. The State District Court did not strike the Motions, or dismiss them as outside of the Court's subject-matter jurisdiction. Rather, the Court denied the Motions, explaining that many were ill-founded on incompetent or insufficient evidence, or were better suited to a disposition in criminal, or in professional disciplinary proceedings. Given the deference we extend to the rulings of a State Court, on matters within that Court's plenary jurisdiction, we express no view on the propriety of the State Court's resolution of Ringsred's post-Trial Motions, other than to note that, if Ringsred were disappointed in those rulings, or otherwise found them to be in error, his recourse was to ask the Court to reconsider, or to file an appeal in the Minnesota Appellate Courts.[18] Ringsred did

---

[18]We recognize that the State District Court expressly stated, as a part of its Order:

> In reviewing plaintiff's allegations the Court does not mean to suggest it has determined any of them to be valid or invalid. The Court recognizes they are claims being asserted by plaintiff and the Court has been required to respond to them in terms of assessing their current procedural posture before the Court. That is all the court has done.

If Ringsred felt that the State District Court should have done more, or otherwise abandoned its obligation to fairly resolve his claims, his redress was in the State Courts, and not in this Court.

neither. "Although couched in the language of the federal statute, [Ringsred's] claims are simply a redux of [his] state claims." Alvarado v. City of Granite Falls, 2001 WL 397891 at *2 (D. Minn., March 23, 2001). Lest there be other doubt about the extent to which the Plaintiffs' Federal claims are inextricably intertwined with Ringsred's State Court claims, we need only note that, as part of their requested relief, the Plaintiffs ask this Court to command future compliance with the Mandatory Injunction issued by the State Court. To do so, of course, necessarily entangles this Court in matters best left to the State Court, but as to which the State Court denied Ringsred his requested relief.

In our system of federalism, Rooker-Feldman serves a fundamental constitutional purpose. If allowed to proceed as a Section 1983 claim, the Plaintiffs' action would, ineluctably, be self-propagating, and would foster further inter-Court collateral attacks, as a prior cause of action is shrouded in constitutional garb so as to seek relief in one Court that was denied in another. We share no secrets in observing that the relations between these litigants are strained, and acrimonious, at their very best. If, as the Plaintiffs urge, a party's deployment of a Rule 11 Sanction,[19] or the mere threat of one, were a sufficient predicate for

---

[19]Only one of the Plaintiffs' claims might be of a type to (continued...)

a denial of access claim, then the Government Defendant's filing of such a request, in this action, would surely spawn a successive action, under Section 1983, in some future State or Federal Court, if, as here, that claim is denied. Indeed, the Plaintiffs urge that most any pretrial dispute can be reasserted, as a denial of

---

[19](...continued)
escape the application of the Rooker-Feldman doctrine. We are unable to discern, based on the Plaintiffs' Complaint, whether Ringsred's assertion, that he was threatened with Rule 11 Sanctions, in January of 2000, relates to his earlier State Court claim, or some other litigation, that he later commenced, inclusive of this one. We find, however, that it makes no difference.

The Minnesota Legislature, as well as the Minnesota Supreme Court, have viewed frivolous litigation with such alarm, as to cause the enactment of a statute, and the promulgation of a Rule, which commends a sober appraisal of the good faith pursuit of claims and defenses in the Minnesota Courts. See, Minnesota Statutes Section 549.211, and Rule 11, Minnesota Rules of Civil Procedure. Were the mere invocation of those statutory, or regulatory measures, sufficient to expose the party, who should provide the notice of potential sanctions to a successive Section 1983 claim, then the vexatiousness, which was sought to be minimized, if not eradicated, by the palliative measures, would soon be its undoing. Commencing litigation is a serious act, as is the mounting of a defense to litigation commenced by another. Sanctions under Rule 11 are not self-effectuating -- the Rule requires a period of notice and cure, before sanctions may be imposed, and then only upon an Order of a Court of law if such sanctions are proven to be warranted. Such a procedure can have no conceivable chilling effect, other than to remove frivolous disputes from the Court's docket. Accordingly, we find, as a matter of law, that the invocation of a threat of Rule 11 sanctions, whether privately, or publicly, could deny Ringsred access to the Court. Moreover, the ultimate sanction, arising from such a threat, may well be to the party uttering the threat, if that party is not successful, see Rule 11(a)(1), Minnesota Rules of Civil Procedure, and such matters are best left to the Court in which the action pends.

access claim, if the dispute can be construed as some form of dissuasion in pursuing a law suit. The potentiality for an unending continuum of litigation should be obvious, as one successive Section 1983 claim begets another, and so on, and so on, and so on.

In sum, on the Record presented, we find no denial of due process, procedural or substantive, nor any denial of access to the Courts, and therefore, we recommend that the Plaintiffs' cause of action be dismissed, on jurisdictional grounds, as we are without the requisite subject matter jurisdiction to entertain the Plaintiffs' Section 1983 claims.[20]

b. <u>The Plaintiffs' Second and Third Causes of Action</u>.

The Second and Third Causes of Action are brought, by Ringsred, on behalf of the State of Minnesota, under the guise of rights afforded under the MERA, or are brought on behalf of Federal, State and local taxpayers. Ringsred contends that the Defendants intentionally and negligently violated various, unspecified laws and statutes, including unprofessional conduct by attorneys, misconduct by public officials, coercion, witness tampering, abuse of competitive bidding for public projects, obstruction of justice, contempt of Court, abuse of legal process, and

[20]Given our recommendation, we need not, and do not, address the Government Defendants' Motion for Summary Judgment on qualified immunity grounds.

deceit-collusion-misconduct by attorneys, perjury, conspiracy to commit crimes, as well as a failure to report misuse of public funds. See, Complaint, at ¶¶13-15, 18-19. He also contends that the Defendants have unlawfully recruited local businesses for the Soft Center/Technology project, thereby injuring Federal, State and local taxpayers, including Duluth businesses. Notwithstanding these bald allegations, Ringsred has failed to demonstrate that he has personally suffered any particularized injury, and he lacks the standing to assert these claims on behalf of the State of Minnesota, or Federal, State and local taxpayers.

Article III of the United States Constitution restricts Federal Courts to the adjudication of actual "cases" and "controversies." The principle of "standing" is among several doctrines -- such as mootness, ripeness, and the involvement of a political question -- which have developed to inform and define the "case or controversy" requirement. See, Allen v. Wright, 468 U.S. 737, 750 (1984); Warth v. Seldin, 422 U.S. 490, 498 (1975); Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, 115 F.3d 1372, 1378 (8th Cir. 1998)("Standing is the constitutional requirement, imposed by the 'cases or controversies' provision of Article III, that a plaintiff must allege a judicially cognizable and redressable injury in order to pursue a lawsuit."); Neighborhood Transp. Network, Inc. v. Pena, 42 F.3d 1169, 1172 (8th Cir. 1994)("Federal courts

are courts of limited jurisdiction and can only hear actual 'cases or controversies' as defined under Article III of the Constitution."). "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, supra at 498-99, quoting Baker v. Carr, 369 U.S. 186, 204 (1982).

It is a plaintiff's duty to show the "minimal constitutional requirements" necessary for standing. Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, supra at 1378. Those elements include:

> [A]n "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that the injury is "fairly traceable" to the challenged action; and (3) that it is likely that a favorable decision will redress the injury.

Id., citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).

In sum, "[a] federal court's jurisdiction * * * can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from putatively illegal action * * *.'" Warth v. Seldin, supra at 499, quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973).

Moreover, even if a plaintiff can satisfy these requirements, the Courts have imposed further "prudential limits" on the Court's exercise of jurisdiction. See, Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, supra at 1378 ("These prudential limits are judicially imposed and 'are "founded in concern about the proper -- and properly limited -- role of the courts in a democratic society."'"), citing Bennett v. Spear, 520 U.S. 154 (1997). There are three particular "prudential limits" which, we conclude, apply to this case. The first is that the Court should not exercise subject matter jurisdiction "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens." Warth v. Seldin, supra at 499, and cases cited therein. A second "prudential limit" dictates that only in exceptional circumstances may a party assert the rights of another. Id.; Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, supra at 1378. "This 'third-party standing' rule thus 'normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" Id. at 1379. Finally, a third "prudential limit" restricts jurisdiction to instances in which a plaintiff, who alleges a constitutional or statutory violation, can show that he is within the "zone of interests," of the particular protection he attempts to assert. See, Bennett v. Spear, supra at 162. "To satis-

fy this prudential requirement, a plaintiff must show that 'the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, supra at 1379, citing Association of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 153 (1970).

Given these principles, it is clear that Ringsred has no standing to assert claims, based on violations of the generalized laws that he broadly references, or of the restraint of trade laws, assertedly on behalf of the State of Minnesota, or Federal, State and local taxpayers. Moreover, he has failed to allege any particularized injuries that he claims to have personally suffered as a result of the alleged violations of these laws.

First, as for the claims that he is asserting on behalf of the State of Minnesota, Ringsred appears to rely upon MERA as the vehicle for his cause of action. While, as Ringsred well knows from his past State Court claims, MERA does allow an individual to prosecute an action on behalf of the State of Minnesota, that action can only be brought "for the protection of the air, water, land, or other natural resources located within the state," and only for declaratory or equitable relief. See, Minnesota Statutes

Section 116B.03. In contrast, Ringsred seeks to use the statute to secure Federal Court jurisdiction for claimed violations of other laws, and of other rights. Although largely unspecified, those claimed violations do not further, in any direct way, the "protection of the air, water, land, or other natural resources," and therefore, MERA clearly does not vest Ringsred with a viable cause of action for any such violations.

Moreover, Ringsred has done no more than allege "'generalized grievances' shared in substantially equal measure by all or a large class of citizens." Warth v. Seldin, supra at 499, and cases cited therein. He has failed to identify any instance in which, he, himself, has suffered a particularized injury on account of the Defendants, given the fact that his underlying State Court suit, during which most of his claims arose, was brought not on his own behalf but, in a representative capacity, on behalf of the State of Minnesota. He neither alleges, nor proves, that he had any direct ownership, or other property interest in any of the buildings which were demolished, and he flatly admits that he has not lost any business due to what he describes as the Defendants "unlawful recruitment of local businesses." See, Deposition of Eric Ringsred, at 77-79. Accordingly, we find that Ringsred has no standing to assert claims on behalf either himself, or the State of Minnesota,

for his alleged violations of various statutes, and for a claimed restraint of trade.[21]

Lastly, Ringsred attempts to assert claims as a Federal, State and local taxpayer. However, the Supreme Court has clearly determined that taxpayers do not have standing to sue public officials, or to be awarded compensatory damages, for governmental actions

[21]Ringsred does allege that the Defendants' unlawful recruitment of business has injured his real estate rental business. See, Complaint, at ¶20. In particular, he maintains that their acts violated Title 15 U.S.C. §1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states * * *, or with foreign nations, is hereby declared to be illegal"), as well as Minnesota Statutes Section 325D.01 ("A contract, combination, or conspiracy between two or more persons in unreasonable restraint of trade or commerce is unlawful"). As for the claimed violation of Title 15 U.S.C. §1, the Plaintiffs have not even asserted that the restraint of trade has affected interstate commerce, but merely alleges that the Defendants unlawfully recruited "local businesses." Complaint, at 21. Moreover, Ringsred has not demonstrated that the assertedly unlawful restraint personally damaged him in any fashion. Specifically, when asked during his deposition whether he has been damaged by the allegedly unlawful recruitment, Ringsred responded that he had only been injured to the extent that one of his tenants had lost a sublessee, which did not result in any loss of rentals to him. See, Deposition of Eric Ringsred, at 77-79.

Thus, notwithstanding his urging, that his own real estate rental business has suffered from the alleged unlawful recruitment, Ringsred has failed to show any particularized injury to his own interests, but only to that of a sublessee. Lest there be doubt to the contrary, the issue of standing is jurisdictional, as to which the Court is empowered, under Rule 12(b)(1), Federal Rules of Civil Procedure, to consider matters outside of the pleadings. See, Deuser v. Vecera, 139 F.3d 1190, 1191 n.3 (8th Cir. 1998), quoting Drevlow v. Lutheran Church, Mo. Synod, 991 F.2d 468, 470 (8th Cir. 1993).

with which they disagree. As the Court has explained, "the expenditure of public funds in an allegedly unconstitutional manner is not an injury sufficient to confer standing even though the plaintiff contributes to the public coffers as a taxpayer." Valley Forge Christian College v. Americans United, 454 U.S. 464, 477 (1982). Further, the Court, in Flast v. Cohen, 392 U.S. 83, 102 (1986), limited constitutional challenges, which are based upon taxpayer standing, to those claims that challenge a congressional enactment which exceeds specific constitutional limitations upon the exercise of the taxing and spending power -- plainly not the case here. Therefore, the Plaintiffs have no standing to bring their Second and Third causes of action, and they should be dismissed for want of subject matter jurisdiction.

c. The Plaintiffs' Fourth Cause of Action.

In their Fourth Cause of Action, the Plaintiffs contend that the Defendants have damaged Ringsred's reputation, through assertedly false, public allegations of "frivolous litigation," and with threats of sanctions for such "frivolous" suits so as to deprive him of his right to procedural due process under the

Fourteenth Amendment. Ringsred may also be claiming defamation under Minnesota law, although that remains unclear.[22]

The United States Constitution does not protect against mere defamation. An interest in reputation, alone, is not a "liberty," or "property" interest that is protected by the Fourteenth Amendment. See, Siegert v. Gilley, 500 U.S. 226, 233-34 (1991); Paul v. Davis, 424 U.S. 693, 712 (1976); Rappa v. Hollins, 991 F. Supp. 367, 372 (D. Del. 1997)("[R]eputation is not a property interest protected by the Due Process Clause"). Rather, to be actionable, the defamation or injury to an interest in reputation must additionally cause the loss of some other right. See, Paul v. Davis, supra at 711. As we have already explained, however, Ringsred has not alleged any viable cause of action for his claimed denial of access to the Courts, or any other constitutional claim, and, therefore, his claim for a loss of reputation, being unaccompanied by the loss of some other right, should be dismissed.

---

[22]Both this claim, and the entirety of the Plaintiffs' Fifth cause of action, to the extent that they rely on the laws of the State of Minnesota -- and the Fifth cause of action has no other basis -- should be dismissed without prejudice. Neither claim has been pled with specificity, and we see no reason to exercise our Supplemental Jurisdiction in order to address what are singularly actions under State law. See, Title 28 U.S.C. §1367(a).

B. The Remaining Motions for Summary Judgment.

The Chamber Defendants, and the Soft Center Defendants, have each moved for Summary Judgment and, as best as we can discern, the only cogent cause of action pled against them arises under Section 1983, and charges them with complicity, with the Government Defendants, in denying Ringsred access to the Court in the context of his previous State Court litigation. Within this Circuit, the fact that the Chamber, and Soft Center Defendants were not parties to the State Court action does not impact upon the applicability of the Rooker-Feldman doctrine. See, Lemonds v. St. Louis County, supra at 495; Leino v. Nelson, 2001 WL 1141817 at *2 n. 5 (D. Minn., August 23, 2001). Accordingly, these Defendants should also be dismissed for want of subject matter jurisdiction over the claims the Plaintiffs have asserted against them, and their Motions for Summary Judgment, to that effect, should be granted.

C. The Government Defendants' Motion for Rule 11 Sanctions.

The Government Defendants seek Rule 11 Sanctions against the Plaintiffs, arguing that Ringsred's[23] second Motion to Amend the Complaint was solely for purpose of delay and harassment, espe-

[23]Deborah Ringsred did not join in the last Motion to Amend the Complaint.

cially in light of the Court's prior admonitions following our denial of his first attempt to amend his Complaint.[24] Moreover, the Government Defendants contend that Ringsred knowingly asserted factual allegations which he knew to be untrue, and they seek $500.00 for each of the affected Defendants, and $1,000.00 in attorney's fees, as well as an Order prohibiting Ringsred from asserting any further Motions to Amend the Complaint.

In relevant part, Rule 11 provides as follows:

> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information,

---

[24]The Government Defendants highlight the following observation in our prior Order of March 14, 2001:

> With no apparent exception, the factual allegations, which they now propose to add to their pleadings, were known to the Plaintiffs for months, if not years, before this action was commenced. In short, the Plaintiffs offer no newly discovered facts as necessitating an Amended Complaint; proverbially, they seek to "pour old wine into a new bottle." Many of the newly proposed factual assertions arose from State Court proceedings, either completed or in progress, which appear to have produced results which were not fully to the Plaintiffs' liking. We find no purpose in allowing the amendment now belatedly sought, other then to foster the Plaintiffs' apparent interest in protraction and delay.

See, Ringsred v. City of Duluth, Civ. No. 00-2241, Order (D. Minn. March 14, 2001).

> and belief, formed after an inquiry reasonable under the circumstances --
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law * * *.

Rule 11, Federal Rules of Civil Procedure.

In addition, Rule 11 requires that every Motion, which is filed in Federal Court, be signed by the party, or an attorney of Record. Id.

According to the Supreme Court, "the central purpose of Rule 11 is to deter baseless filings in district court." Simitar Entertainment, Inc. v. Silva Entertainment, Inc., 44 F. Supp.2d 986, 991 (D. Minn. 1999), quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). As such, under Rule 11(c) "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may * * * impose an appropriate sanction upon the attorney, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Monson Trucking, Inc. v. International Broth. of Teamsters, Local 346, 2000 WL 1196317 at *8 (D. Minn. 1999). In determining whether sanctions are warranted, the Court must use an objective

standard of reasonableness, and must consider factors such as the wrongdoer's history, the severity of the violation, and the degree to which malice or bad faith contributed to the violation. See, Business Guides v. Chromatic Communications Enters., Inc., 498 U.S. 533 (1991); Pope v. Federal Express Corp. 49 F.3d 1327, 1328 (8th Cir. 1995).

We recognize that Ringsred's second Motion to Amend the Complaint, like his first, did not contain any newly discovered allegations, but we are not persuaded that the purpose of the Motion was to harass the Defendants, or to delay these proceedings. We do not presume bad faith. Rather, we are satisfied that, when Ringsred was caused to respond to the Defendants' dispositive Motions, he ran abruptly into the wall of vagueness presented by the allegations of the Plaintiffs' original Complaint. Although the Plaintiffs' proposed first Amended Complaint sought to instill some clarity to the Plaintiffs claims, the Complaint also sought to vastly expand the number of claims asserted, and many of the claims were found, upon analysis, to be futile. The Plaintiffs' second attempt at amendment, which was a response to the Government Defendants' Motion to Dismiss, that accused the Plaintiffs of obscurity in the pleading of their claims, was explained, by Ringsred, as a sincere effort to crystallize the claims the Plaintiffs had earlier raised. We take Ringsred at his word, although we view the claims

in the second proposed amendment to be more expansive than those originally alleged. While misguided, and untimely, we do not regard the second attempt at amending the Plaintiffs' Complaint as worthy of Rule 11 Sanctions.

Nor do we find any palpably false allegations in the second proposed amendment. The Government Defendants have identified six assertions in which, they believe, Ringsred has been less than candid. See, Government Defendants' Memorandum Supporting Motion for Rule 11 Sanction, at 8-10. Without derogating the accuracy and sincerity which should attach to the pleading of claims, the instances of inaccuracy, which are cited by the Government Defendants bespeak of semantics, and not of untruths. Not surprisingly, the Government Defendants are unpersuaded by the merits of the Plaintiffs' proposed claims and allegations and, it appears to us, this adversarial perspective has colored their view of Ringsred's motives. While Ringsred's allegations may not prove to be accurate, were they to be submitted for adjudication, they appear to accurately state his impression as to past events, and circumstances. In short, we have reviewed our fair share of meritorious Motions for Rule 11 Sanctions and, thankfully for all concerned, this is not one of them. Consequently, we deny the Government Defendants' Motion for Rule 11 Sanctions.

NOW, THEREFORE, It is --

ORDERED:

1. That the Motion of the Plaintiffs to Compel the Appearance of the individual Government Defendants at a Deposition [Docket No. 56] is DENIED as moot.

2. That the Motion of the Government Defendants for a Protective Order [Docket No. 58] is DENIED as moot.

3. That the Motion of the Plaintiffs to File a Memorandum in Opposition to the Government Defendants' Motion for Dismissal [Docket No. 63] is GRANTED.

4. That the Government Defendants' Motion for Leave to File an Untimely Reply Memorandum [Docket No. 66] is GRANTED.

5. That the Plaintiffs' Motion to Amend the Scheduling Order of December 1, 2000, so as to Allow an Amendment of their Complaint, [Docket No. 70] is DENIED.

6. That the Plaintiffs' Motion to Amend their Complaint [Docket No. 70] is DENIED.

7. That the Motion of the Government Defendants for Rule 11 Sanctions [Docket No. 97] is DENIED.

8. That the Informal Motion of the Defendants to Strike [Docket No. 109 and 110] is GRANTED in part, and DENIED in part.

AND, It is --

RECOMMENDED:

1. That the Motion of the Government Defendants to Dismiss the Plaintiffs' Complaint for lack of subject matter jurisdiction [Docket No. 48] be GRANTED.

2. That the Motion of the Soft Center Defendants for Summary Judgment [Docket No. 83] be GRANTED.

3. That the Motion of the Chamber Defendants for Summary Judgment [Docket No. 94] be GRANTED.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than November 8, 2001,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as

a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than November 8, 2001**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.

**Date:** 10/23/2001 8:49 AM
**Sender:** Fax Client Server
**To:** Marcy Bruckelmyer; Cyndee Francis; Jon Mayer
**Priority:** Normal
**Subject:** Fax send info for 0:00cv2241

Case 0:00cv2241 sent to be faxed 10/23/01 at 08:49:36.53

| | | | |
|---|---|---|---|
| Wade, James Ala | Johnson Killen & Seil | 230 Superior St | N/A mailed 10-23-01 mb |
| Lutterman, Mary | Duluth City Attorney | City Hall Bldg | 912185298291 |
| Engh, Paul Chri | Engh Law Office | 821 Marquette A | N/A - mailed 10-23-01 mb |
| Torgerson, Robe | Hanft Fride O'Brien H | 130 W Superior | 912185292401 |
| Ringsred, Eric | Pro Se | 701 Arrowhead R | N/A - mailed 10-23-01 mb |
| Christensen, Ro | Johnson Killen & Seil | 230 Superior St | N/A - mailed 10-23-01 mb |